[No. 83788-1.   En Banc.]
Argued June 28, 2011.     Decided September 15, 2011.

*In the Matter of the Personal Restraint of* DEMAR RHOME,
*Petitioner.*

*Michael Filipovic* (of *Federal Public Defender*), for petitioner.

*Daniel T. Satterberg, King County Prosecuting Attorney*, and *Deborah A. Dwyer, Deputy*, for respondent.

¶1 STEPHENS, J. — In this original personal restraint petition, Demar Rhome argues that the state and federal constitutions require independent findings of fact that a defendant is competent to waive counsel and represent himself at trial. He also argues that the colloquy conducted by the trial court here was inadequate to secure a valid waiver of counsel. We disagree and dismiss his personal restraint petition.

## FACTS AND PROCEDURAL HISTORY

¶2 In November 2003, 17-year-old Lashonda Flynn was stabbed to death. Seventeen-year-old Kialani Brown confessed to the killing but pointed to Rhome as the mastermind behind the slaying.[1] Rhome was charged in King County Superior Court with first degree murder with a deadly weapon.

¶3 Rhome's mental competency became an issue at trial. Since early childhood, Rhome has been treated for psychiatric disturbances, including several in-patient stays at psychiatric hospitals. Personal Restraint Petition (PRP), Ex. A at 2. He received multiple diagnoses during those stays, including psychotic disorder, delusional disorder, oppositional defiant disorder, mild mental retardation, obses-

---

[1] Brown pleaded guilty to second degree murder and is serving a 120-month sentence. She testified against Rhome at his trial.

sive-compulsive personality traits, and pervasive development disorder (Aspergers disorder). *Id.* at 4. On June 8, 2005, the trial court held a competency hearing to address Rhome's lengthy history of mental health issues. After considering the evidence and arguments of counsel, King County Superior Court Judge Gregory P. Canova found that the defense had not met the burden of proving Rhome was incompetent to stand trial. Verbatim Report of Proceedings (VRP) (June 8, 2005) at 149. Shortly after the competency hearing, Rhome received new counsel.

¶4 Throughout pretrial proceedings, Rhome asserted the right to represent himself. On June 27, 2005, King County Superior Court Judge Ronald Kessler denied Rhome's initial request to proceed pro se, finding it to be equivocal. VRP (June 27, 2005) at 15. On August 30, 2005, Judge Kessler considered a renewed request from Rhome to proceed pro se. He advised Rhome of the risks of representing himself and engaged in a colloquy to determine if Rhome understood the significance of his undertaking. Rhome's mental health issues were not specifically addressed during the colloquy. At the conclusion of the hearing, Judge Kessler granted Rhome's request to proceed pro se, and appointed standby counsel. VRP (Aug. 30, 2005) at 12.

¶5 Proceedings began in February 2006 with King County Superior Court Judge Nicole MacInnes presiding. Rhome represented himself throughout. In reviewing Rhome's performance during pretrial and trial proceedings, a defense expert opined that Rhome's mental illness impacted his ability to defend himself in court, including engaging in "perseverative, aggressive questioning that often was incoherent or intimidating" and impairment in terms of "[e]ngaging in adequate self-regulation of his emotions and inhibiting his behavior in an appropriate manner." PRP, Ex. A at 58-60 (Report of David M. White, Licensed Psychologist). Rhome was convicted by a jury as charged and sentenced to 371 months in prison.

¶6 Rhome timely filed a direct appeal with the Court of Appeals. On December 7, 2007, the United States Supreme

Court granted certiorari in *Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008), which posed the question whether a state trial court could constitutionally consider a defendant's mental health history when deciding whether the defendant should be allowed to waive counsel and represent himself. On December 19, 2007, Rhome's appellate counsel moved to stay his appeal in light of *Edwards*. The Court of Appeals denied the stay, and in February 2008 it affirmed Rhome's conviction and sentence. On June 19, 2008, *Edwards* announced that a trial court may insist a defendant proceed with counsel even though he has been found competent to stand trial. On November 6, 2008, this court denied review of Rhome's direct appeal.

¶7 This petition stems from a habeas petition filed on February 3, 2008 with the United States District Court for the Western District of Washington. On March 6, 2009, the federal district court appointed counsel to represent Rhome. On June 15, 2009, the district court granted Rhome's request to stay the federal proceedings to allow him to present unexhausted claims to the state courts. Accordingly, on October 23, 2009, represented by his appointed federal public defenders, Rhome filed this original personal restraint petition challenging the trial court's decision to allow him to waive counsel and proceed pro se.

## ANALYSIS

¶8 Rhome challenges the trial court's decision on three grounds. Two of his arguments have a constitutional flavor, and one is a challenge to the trial court's discretionary decision accepting his waiver of counsel under the abuse of discretion standard. These arguments are independent of one another, but they all rely on a handful of relevant cases. Accordingly, it is helpful to begin by reviewing the case law.

Background: Relevant Authority on the Question of Waiver
of Counsel

*Federal Cases*

¶9 In *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the United States Supreme Court affirmed a defendant's constitutional right to represent himself at trial, implied under the federal Sixth and Fourteenth Amendments. In *Faretta*, there was no question as to the defendant's competency. *See id.* at 835 (observing that "[t]he record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will"). The Court did not find an absolute right to self-representation, but rather required that the waiver of counsel be knowing and intelligent. *Id.* In choosing self-representation, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942)). Thus, although *Faretta* recognized that the right to self-representation is rooted in " 'that respect for the individual which is the lifeblood of the law,' " *id.* at 834 (quoting *Illinois v. Allen*, 397 U.S. 337, 350-51, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) (Brennan, J. concurring)), it placed on that right certain limits.

¶10 The outer bounds of those limits were explored in *Edwards*, 554 U.S. 164. There, the United States Supreme Court considered whether a state may insist that a defendant who is found mentally competent to stand trial must nevertheless proceed to trial with counsel, rather than be allowed to represent himself. *Id.* at 167. Recognizing that *Faretta* and authority since *Faretta* placed limits on the right to self-representation, *id.* at 171, the *Edwards* Court further held that it is constitutionally permissible for a state to deny

a defendant pro se status "on the ground that [he] lacks the mental capacity to conduct his trial defense" even though he was found competent to stand trial. *Id.* at 174.

¶11 The *Edwards* Court observed that the standard to determine whether a defendant is competent to stand trial assumes he will *assist* in his defense, not conduct his defense, and therefore competency to stand trial does not automatically equate to a right to self-representation. *Id.* 174-75. In addition, while the dignity and autonomy of an individual underscore the right to self-representation, in the *Edwards* Court's view,

> a right of self-representation at trial will not "affirm the dignity" of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel. To the contrary, given that defendant's uncertain mental state, the spectacle that could well result from his self-representation at trial is at least as likely to prove humiliating as ennobling.

*Id.* at 176 (citation omitted) (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 176-77, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984)). Furthermore, "insofar as a defendant's lack of capacity [for self-representation] threatens an improper conviction or sentence, self-representation in that exceptional context undercuts the most basic of the Constitution's criminal law objectives, providing a fair trial." *Id.* at 176-77. Finally, in addition to a concern that the proceeding be fair, the *Edwards* Court also worried that self-representation in this context might damage the appearance of fairness observers expect from our justice system. *Id.* at 177.

¶12 With these concerns in mind, the *Edwards* Court concluded that it is constitutionally permissible for a state to set limits on a defendant's pro se right even when he is competent to stand trial. However, the *Edwards* Court declined to announce a constitutional standard by which courts must judge a defendant's right to self-representation when his competency to stand trial has been questioned. *Id.* at 178.

*State Cases*

¶13 Well before the United States Supreme Court addressed a federal constitutional right to self-representation in *Faretta*, this court considered a right to self-representation under our state constitution. *State v. Kolocotronis*, 73 Wn.2d 92, 97, 436 P.2d 774 (1968) (quoting WASH. CONST. art. I, § 22). There, the defendant had a lengthy history of admission to psychiatric hospitals, and his competency to stand trial was evaluated. *Id.* at 94. Upon being found competent to stand trial, the defendant made a request to represent himself with standby counsel on hand. *Id.* at 95. While the court allowed him to participate in some aspects of trial, such as delivering an opening statement and conducting cross-examination, the court also permitted standby counsel to call and question witnesses, to present an insanity defense over the defendant's objection, and to make a closing argument. *Id.* at 95-96. The jury found the defendant not guilty by reason of insanity, but determined he was not safe to be at large in the community. *Id.* at 96. The defendant appealed, claiming he had been denied his right to self-representation.

¶14 Acknowledging that our state constitution grants a defendant the explicit right to appear pro se, the *Kolocotronis* court cautioned that the right of an accused "to act as his own counsel may not properly be construed as an absolute right in all cases." *Id.* at 98. Instead,

> if the court determines that [the defendant] does not have the requisite mental competency to intelligently waive the services of counsel nor adequate mental competency to act as his own counsel, then his right to a fair trial and his constitutional right to due process of law, is disregarded if the court permits him to so act in a criminal case.

*Id.* at 99.

¶15 *Kolocotronis* thus allows a trial court to limit the right to self-representation when there is a question about

a defendant's competency to waive counsel or to act as his own counsel, even if the defendant has been found competent to stand trial. This reflects concern for a defendant's right to a fair trial and due process of law.

¶16 Our most recent case on this issue considers a waiver of counsel by a defendant whose competency was in question. *State v. Hahn*, 106 Wn.2d 885, 726 P.2d 25 (1986). Hahn carried a diagnosis of paranoid schizophrenia, but had been found competent to stand trial and was allowed to proceed pro se with standby counsel. On appeal, he challenged the validity of his waiver of the right to counsel. This court recognized that "a defendant who is competent to stand trial may waive the assistance of counsel if the waiver is made knowingly and intelligently." *Id.* at 893.

¶17 Given the record before it, the court in *Hahn* found that the waiver colloquy conducted by the trial court was satisfactory though it did not appear to include substantial consideration of the defendant's mental status. *Id.* at 896 (referring to the waiver examination as "textbook"); *see id.* at 900 n.11 (observing that the Court of Appeals criticized the trial court for failing to make any inquiries about the defendant's medication, but excusing such an omission because a letter from the defendant's clinical psychiatric team advised that medication would not improve Hahn's condition).

¶18 The court in *Hahn* recognized that it had not considered the "waiver of counsel by psychotic defendants" since *Kolocotronis. Id.* at 890. The court concluded that *Kolocotronis* remained valid after *Faretta*, though *Faretta* rendered inappropriate any consideration of a defendant's " 'skill and judgment' " to represent himself. *Id.* at 890 n.2 (quoting *Kolocotronis*, 73 Wn.2d at 102). The court summarized its holding:

> For purposes of clarification, the respective standards for waiver follow: The test for competency to stand trial is if the defendant has the capacity to understand the nature of the proceedings against him and to assist in his own defense. [*State*

*v.*] *Ortiz*, [104 Wn.2d 479,] 482, [706 P.2d 1069 (1985)]; RCW 10.77.010(6). The standards for waiver of both an insanity plea and the right to counsel are (1) competency to stand trial and (2) a knowing and intelligent waiver with "eyes open", which includes an awareness of the dangers and disadvantages of the decision. [*State v.*] *Jones*, [99 Wn.2d 735,] 741, [664 P.2d 1216 (1983)] (citing *Faretta v. California*, [422 U.S. 806]). In each case, the trial court must make a factual determination on the record.

*Id.* at 895.[2] In discussing the validity of a waiver decision, this court noted that

[w]hether there has been an intelligent waiver of counsel is an *ad hoc* determination which depends upon the particular facts and circumstances of the case, including the background, experience and conduct of the accused.

*Id.* at 900. "This determination is within the discretion of the trial court." *Id.*

Rhome's Challenges

■ ¶19 It appears that existing precedent in many ways defines the contours of the question before us. A defendant whose competency to stand trial has been questioned must knowingly and intelligently waive the right to counsel. *Hahn*, 106 Wn.2d at 893. In considering whether a defendant whose competency is in question is capable of making a knowing and intelligent waiver, a trial court considers the background, experience, and conduct of the accused, which may include a history of mental illness. *Kolocotronis*, 73 Wn.2d at 99; *Hahn*, 106 Wn.2d at 900. The court may not, however, consider the defendant's " 'skill and judgment.' " *Hahn*, 106 Wn.2d at 890 n.2 (quoting *Kolocotronis*, 73 Wn.2d at 102 and citing *Faretta*, 422 U.S. 806).

---

[2] It stands to reason that the *Hahn* court did not conclude that competency to stand trial should automatically mean the defendant is capable of making a knowing and intelligent waiver of his right to counsel. Such a competency determination reflects that the defense did not meet its burden of overcoming the general presumption of competency to stand trial. It does not establish competency as a baseline for all purposes.

■ ¶20 Rhome is essentially asking this court to reconsider *Hahn* in light of *Edwards* and to conclude as a matter of law that a judge must independently determine that a defendant is mentally competent not just to stand trial but to represent himself. Rhome sets forth three independent arguments.

¶21 First, Rhome argues that his federal Sixth and Fourteenth Amendment rights were violated when the trial court allowed him to waive counsel without conducting a searching inquiry into Rhome's capacity to represent himself, given the trial court's knowledge of Rhome's mental health issues. He argues that *Edwards* supports this claim because there "the Supreme Court made clear that the Constitution authorizes a separate inquiry into a defendant's mental competency to conduct trial proceedings even where the defendant is competent to stand trial." PRP at 24.

¶22 Second, Rhome argues the due process clause of our state constitution requires a separate inquiry into mental competency to waive counsel when competency is otherwise in question. He relies on *Kolocotronis* in support of this argument. "Washington law pre-dating the United States Supreme Court's decision in *Faretta* made clear that the mental competency of a defendant who is competent to stand trial, but has a long history of serious mental illness, must be considered in determining whether such a defendant may proceed pro se at trial." PRP at 31 (citing *Kolocotronis*, 73 Wn.2d at 99). Rhome further argues that *Edwards* supports Washington's "two-tier competency inquiry." PRP at 33.

¶23 We question this reading of the case law. Initially, Rhome overstates the rule *Kolocotronis* sets forth. *Kolocotronis* does not hold that a trial court *must* consider a hopeful pro se defendant's mental health status when competency has been questioned. It instead affirmed the actions of a trial court that did so; the factual posture of the case left for another day a scenario where a trial court did not evaluate a defendant's mental health status when considering a waiver

request. That question arose in *Hahn*. Rhome argues that *Edwards* overruled "*Hahn*'s conclusion that the *federal* constitutional right to self-representation trumped the other countervailing constitutional and prudential concerns." Pet'r's Reply to State's Resp. to PRP (Reply) at 13. But this was not the court's conclusion in *Hahn*. Looking at the record before it, the court in *Hahn* merely held that the trial court secured the defendant's knowing and intelligent waiver notwithstanding that the court did not independently evaluate the defendant's mental status following a competency determination.

¶24 Moreover, *Edwards* does not *require* trial courts to evaluate a defendant's mental health status in order to secure a valid waiver of counsel. Rather, *Edwards* held that a state court may take this into account, and strongly suggested such considerations are integral to a knowing and intelligent waiver. In short, *Hahn* remains good law after *Edwards*, though it cannot be read in isolation from *Kolocotronis*. Read together, these three cases stand for the proposition that a defendant's mental health status is but one factor a trial court may consider in determining whether a defendant has knowingly and intelligently waived his right to counsel, but they do not require us to find that an independent determination of competency for self-representation is a constitutional mandate.[3]

¶25 There may be room within the universe of *Edwards*, *Kolocotronis*, and *Hahn* to craft a due-process-based rule requiring a more stringent waiver of counsel for a defendant whose competency is questioned. But the State is correct that this would be a new rule of criminal procedure.

---

[3] Rhome also argues that our state constitution is more protective of a mentally ill defendant's right to due process and a fair trial, and offers a *Gunwall* analysis to support his position. PRP at 35-40; *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808 (1986). But much of Rhome's argument, and his *Gunwall* analysis, rests upon his reading of *Kolocotronis* as requiring a trial court to consider mental health status when a questionably competent defendant seeks to waive counsel and proceed pro se. For the reasons discussed, Rhome reads too much into *Kolocotronis*, and fails to establish that in this context the state constitution offers broader due process protection than the federal constitution.

State's Resp. to PRP at 12. As noted, our existing law does not require a court to apply a different standard beyond securing a knowing and intelligent waiver from a mentally ill defendant seeking to waive counsel and proceed pro se. *Hahn*, 106 Wn.2d at 895. The existing law already provides for judges to be sensitive to mental health issues when considering whether to grant a waiver, *Kolocotronis*, 73 Wn.2d at 99, but this does not translate into a heightened standard for waiver of counsel and pro se representation when there are mental health issues present. If we announced such a requirement, it would be a new rule.

¶26 We need not consider if such a rule is appropriate because even if adopted, Rhome cannot get the benefit of such a rule for the first time on a PRP. In *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) (plurality opinion), the United States Supreme Court made it clear that new constitutional rules of criminal procedure generally will not be retroactively applied on collateral attack. There are two exceptions: (1) rules that place certain kinds of primary, private individual conduct beyond the State's power to prohibit and (2) rules that require observance of procedures that are implicit in the concept of ordered liberty. *State v. Abrams*, 163 Wn.2d 277, 290-91, 178 P.3d 1021 (2008) (quoting *Teague*, 489 U.S. at 311).

¶27 The first exception would not apply to a rule requiring a higher standard for a mentally ill defendant to waive counsel and proceed pro se, as such a rule would not decriminalize behavior for which the individual was punished. Nor would the rule fall into the second exception. The United States Supreme Court observed that " '[t]his class of rules is extremely narrow,' " and it is unlikely that one has yet emerged. *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 269-70, 111 P.3d 249 (2005) (alteration in original) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004)). This narrow exception is reserved for " ' " 'watershed rules of criminal procedure' implicating

the fundamental fairness and accuracy of the criminal proceeding." ' " *Id.* (quoting *Summerlin*, 542 U.S. at 352) (quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990) (quoting *Teague*, 489 U.S. at 311 (plurality opinion)))). While issues surrounding the right to counsel and waiver of counsel are undoubtedly linked to the fundamental fairness of a proceeding, a rule such as the one proposed by Rhome, if adopted, would not " ' "alter our understanding of the *bedrock procedural elements*" ' essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S. Ct. 2822, 111 L. Ed. 2d 193 (1990) (quoting *Teague*, 489 U.S. at 311 (plurality opinion) (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S. Ct. 1160, 28 L. Ed. 2d 404 (1971))). "That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.' " *Summerlin*, 542 U.S. at 352 (quoting *Teague*, 489 U.S. at 313 (plurality opinion)). We do not find the new rule Rhome advocates meets either of the exceptions that would allow him to benefit from a new rule on collateral attack.

¶28 This leaves only Rhome's argument that the trial court erred by accepting his waiver of counsel as knowing and intelligent. To summarize the applicable law: when a defendant who has been found competent to stand trial seeks waiver of counsel, the waiver must be not only voluntary, but knowing and intelligent. *Hahn*, 106 Wn.2d at 895; *Kolocotronis*, 73 Wn.2d at 99. A trial court may consider a defendant's mental health history and status when competency has been questioned, even where the defendant has been found competent to stand trial. *Kolocotronis*, 73 Wn.2d at 99; *Edwards*, 554 U.S. at 174.

¶29 We review a trial court's decision on such a waiver for abuse of discretion. *Hahn*, 106 Wn.2d at 900.[4] A waiver determination is an ad hoc determination that rests

---

[4] Rhome argues that federal law allows for a de novo standard of review when considering the adequacy of waiver of counsel. Reply at 14 (citing *United States v.*

on a judge's evaluation of a defendant's conduct, background, and experience. *Id.*

> A court abuses its discretion when an "order is manifestly unreasonable or based on untenable grounds." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). A discretionary decision "is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). Moreover, a court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Fisons*, 122 Wn.2d at 339.

*State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

¶30 The record before us does not evidence any abuse of discretion. Judge Kessler, aware that Judge Canova had previously found Rhome competent to stand trial, twice considered Rhome's request to waive counsel and proceed pro se. At both hearings, the trial court engaged in a colloquy on the record, Judge Kessler discussed with Rhome the nature of the charges against him, of which Rhome evinced an understanding, VRP (Aug. 30, 2005) at 7-9, as well as the fact that Rhome would need to have some familiarity with the rules of evidence and superior court criminal rules. *Id.* at 8-9. He pressed Rhome on whether Rhome understood that he would be held to the same standards as an attorney with regard to making proper objections and admitting evidence. *Id.* at 9-11. Judge Kessler warned Rhome that he believed Rhome was making a bad decision. "If I [Judge Kessler] were charged with a crime, whether it was a serious crime or not serious crime, I would have a lawyer, and I am a lawyer." *Id.* at 11-12. We cannot conclude that the trial court's ruling was unsupported by the record or based on an erroneous view of the law.

---

*Erskine*, 355 F.3d 1161, 1166 (9th Cir. 2004)). But he acknowledges that Washington case law uses an abuse of discretion standard and he does not offer a way to depart from this standard. Thus, we continue to adhere the abuse of discretion standard articulated in *Hahn*.

■ ¶31 While there was no abuse of discretion here, it bears repeating that nothing precludes trial courts from inquiring further into a defendant's ability to waive counsel when mental health concerns are present. That is clear from *Kolocotronis*. 73 Wn.2d at 99. A searching inquiry into a defendant's mental health status is different from an inquiry into a defendant's skill and judgment to act as his own lawyer. As *Faretta* instructs, trial courts cannot deny pro se status simply because a lay person lacks the training and experience of a lawyer. 422 U.S. at 835. But trial courts may consider that a defendant's mental capacity will have serious and negative effects on the ability to conduct a defense. Skill is not the same as capacity.

■ ¶32 Moreover, trial courts are also charged with protecting countervailing constitutional rights apart from self-representation. *See Rafay*, 167 Wn.2d at 654; *Kolocotronis*, 73 Wn.2d at 99 (noting that "if the court determines that [the defendant] does not have the requisite mental competency to intelligently waive the services of counsel nor adequate mental competency to act as his own counsel, then his [fair trial and due process rights are] disregarded if the court permits him to so act in a criminal case"). Thus, a trial court's discretionary decision to accept a waiver of counsel in favor of pro se representation allows consideration of the impact such a waiver will have on countervailing rights. *See Rafay*, 167 Wn.2d at 654; *Edwards*, 554 U.S. at 177. Although Judge Kessler could have expressly included a discussion of such concerns in his colloquy, the absence of such discussion does not make his decision to grant Rhome's waiver an abuse of discretion.

## CONCLUSION

¶33 Rhome does not demonstrate that federal or state law requires an independent determination of mental competency to proceed pro se when a mentally ill defendant seeks to waive counsel. Even if such a rule could be crafted

from reading *Edwards* in conjunction with this court's precedent, Rhome cannot benefit from that rule on a personal restraint petition. Rhome also fails to show that on this record, the trial court abused its discretion when it found his waiver of counsel to be knowing and intelligent. Having shown no error, Rhome's personal restraint petition fails. We dismiss the petition.[5]

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and WIGGINS, JJ., concur.

---

[5] Rhome filed pro se motions to vacate judgment and for postrelief judgment with this court. These filings do not appear to argue anything beyond what his attorneys have included in their briefing before this court. We deny the motions.