IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33934-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN LEE GALLO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Kevin Lee Gallo appeals the trial court's denial of his motion to represent himself. The State defends the court's decision on the basis that Mr. Gallo was equivocal in his request to represent himself or disruptive, but the record does not bear out its arguments.

While the trial court was no doubt motivated by concern for Mr. Gallo's best interest, it applied an improper standard in revoking its order permitting self-representation. Mr. Gallo must be afforded a new trial on the two counts for which he was convicted.

## ANALYSIS

Kevin Lee Gallo was found on Washington State Penitentiary property in March 2015 and was arrested on outstanding warrants. During a search incident to arrest, officers found a small "baggie" containing methamphetamine and a glass smoking device with residue inside in Mr. Gallo's pockets. The State charged Mr. Gallo with possession of a controlled substance (methamphetamine), use of drug paraphernalia, and second degree criminal trespass.

The court appointed a lawyer, but Mr. Gallo immediately indicated he wished to represent himself. The Honorable Scott Wolfram presided at a hearing on Mr. Gallo's motion for self-representation, which was attended by his then-appointed lawyer, Jerry Makus. Judge Wolfram engaged in a lengthy colloquy with Mr. Gallo in which he questioned him about his education, knowledge of the law and court rules, experience in court proceedings, and reasons for wanting to represent himself. The judge pointed out the maximum penalty for the charges against him; warned him that by representing himself he would be at a disadvantage; and informed him that he would need to question and cross-examine witnesses, make objections, present evidence, pick his jury, exercise challenges, submit pretrial motions, make discovery requests, and preserve errors for appeal. Judge Wolfram also warned Mr. Gallo that he could not later complain that he was provided with inadequate representation. Having satisfied himself that Mr. Gallo's request was knowing and intelligent, Judge Wolfram signed Mr. Gallo's waiver of

2

counsel and appointed Mr. Makus as standby counsel.

When Mr. Gallo failed to appear for his trial date in late May 2015, the Honorable John W. Lohrmann issued a bench warrant for his arrest. Mr. Gallo was arrested and booked into the Walla Walla County Jail less than a week later.

A couple of weeks thereafter, Judge Lohrmann conducted a pretrial hearing for a trial that was then set for June 30. Mr. Gallo asked the court for a trial continuance, explaining that he had "two cases going on in Benton County." 2 Report of Proceedings (RP) at 7.[1] He waived his speedy trial right. Judge Lohrmann thoroughly questioned Mr. Gallo a second time about his decision to represent himself, stating he wanted to see if Mr. Gallo was "really ready and capable and knowingly, intelligently and voluntarily making [the] decision to represent [himself]." *Id.* The court again went over Mr. Gallo's education, job history, courtroom experience, mental health history, and inquired about his understanding of the law and procedures that would apply. Mr. Gallo stated he was currently representing himself in two matters in Benton County, that he had no history of mental illness, and that he had undergone one competency examination in which he had been found competent. He acknowledged that he needed to go to the law library to study some of the law and procedure that would apply to his case.

In response to numerous warnings by Judge Lohrmann on the challenges of trial

---

[1] "1 RP" refers to the verbatim report of the May 13, 2015 proceedings; "2 RP" refers to the verbatim report of all other reported proceedings.

No. 33934-3-III
*State v. Gallo*

and the disadvantages of self-representation, Mr. Gallo repeatedly said he understood.

Judge Lohrmann concluded,

> I'm going to go ahead and find that your decision to represent yourself is knowingly, intelligently and voluntarily made, that you are waiving your right to counsel with the full understanding of what your rights are[. H]e has an appreciation of the charges, the consequences of representing himself, and is aware of the danger that he faces, so I'm going to allow it.

2 RP at 15. He reappointed Mr. Makus as standby counsel and set a new omnibus hearing for July 31, with a new trial date of August 18.

Mr. Gallo failed to appear for the July 31 omnibus hearing, so the trial court again issued a bench warrant for his arrest. The State would later amend the information to include a charge of bail jumping. Mr. Gallo was not arrested until October 9, 2015.

At a hearing before Judge Lohrmann a few days thereafter, Mr. Gallo explained that he had been in jail in Benton County. Judge Lohrmann revoked Mr. Gallo's pro se status and reappointed Mr. Makus during the following exchange:

> [MR. GALLO]: Good morning, Your Honor[.]
> THE COURT: Good morning, Mr. Gallo. You seemed to have disappeared for awhile.
> [MR. GALLO]: I did. I went back to Tri-Cities. I was in the middle of a move before I got in trouble, while moving back to Walla Walla, went back there to tie up loose ends with the move and legal stuff and I ended up in jail over there.
> I did get some stuff done with DSHS and I have been to a drug and alcohol assessment, that I've got the results—don't know if the Court would be interested in that at all. And I am back in Walla Walla. Arrived not the way I wanted to come, but the State gave me a ride here and I do not need to go back to Benton County. The—my legal stuff there is taken care of. There would be no more warrants anywhere. I just want an

4

opportunity to get things cleared up here now.

THE COURT: I'm going to reappoint Mr. Makus to represent you. And I think you are in need of some legal assistance at this point, some specialized legal advice given your situation. I'm going to revoke your pretrial release. Set bail at $10,000.

Was there briefly bail posted in this?

[PROSECUTOR]: There had been.

THE COURT: Oh, I recall. We released the bail so that you could get some things taken care of.

[MR. GALLO]: Um hmm. And I wasn't able to make it back until now. I have been incarcerated in Benton County.

As far as my attorney, Makus, I don't think that's going to work out. I tried to work with him and I just can't do it. Doesn't seem to want to do anything that I want to do and just argues with me and tells me I can't do that. So I don't, I don't—I think I would need counsel from, you know, because I haven't found one without a conflict of interest.

THE COURT: Mr. Makus is in the courtroom. Is there an ethical reason why you could not serve as Mr. Gallo's attorney?

MR. MAKUS: No, not as far as I am concerned, Your Honor. He does have his own independent thinking, and doesn't like the advice I give. But other than that, I think—

THE COURT: Well, I'm going to go ahead and reappoint Mr. Makus. You just don't get your choice of a lawyer who you might get along with, Mr. Gallo. All the attorneys on our defense panel here are extremely capable, I've got to tell you, and successful. And so my suggestion is you listen carefully and listen to the advice on matters of strategy and if you really want to represent yourself, again, we'll deal with that at a later time. And believe me I'm going to inquire very carefully. You haven't shown me that you are really able to represent yourself. I have grave concerns about that.

[MR. GALLO]: Understood.

. . . .

[MR. GALLO]: Your Honor, would you be able to instruct the attorney to do as I say instead of telling me what I have to do?

THE COURT: No. You know, I can't do that, Mr. Gallo. The attorney is ethically bound to exercise his judgment in terms of advice given to you. There is—ethically he can't do certain things. For example, if you want him to do something that he knows is improper, he can't do it. He is ethically forbidden from doing that sort of thing. So, again, see what

you can do, and listen carefully, respectfully, okay?
[MR. GALLO]: I will try to work with him. Thank you, Your Honor.

2 RP at 21-23.

On October 20, Mr. Gallo wrote a letter to Judge Lohrmann complaining that Mr. Makus "will not work with me." Clerk's Papers (CP) at 71. He stated he needed effective defense counsel without a "conflict of interest" and "if I can not effectively defend myself the . . . State will have to pay for outside council [sic]." *Id.* (emphasis omitted). He asked the judge to schedule a hearing "ASAP to address this subject." *Id.* (emphasis omitted).

Mr. Gallo was arraigned on the bail jumping charge on October 26. The next transcribed proceeding in our record is trial, which began on November 30, 2015.

Mr. Makus represented Mr. Gallo at trial. At the close of the State's evidence, he successfully moved to dismiss the bail jumping charge. The jury found Mr. Gallo guilty of possession of methamphetamine and use of drug paraphernalia but acquitted him of the criminal trespass charge.

At sentencing, the trial court asked Mr. Gallo:

> THE COURT: Mr. Gallo, I—just out of curiosity, it is my observation in this case that you were greatly assisted by legal counsel representing you. Without getting a dismissal of those two additional counts you would be looking at substantially more time. I'm just curious, do you understand the helpfulness of legal counsel by now?
> [MR. GALLO]: I do, Your Honor. Yes, it is very confusing and overwhelming not to have one if I did not take advantage of it.
> THE COURT: I just hope in the future that you understand that

6

these lawyers sometimes aren't real polite. They are very busy people and don't have the greatest bedside manners in the world but they are darn good attorneys and that is just an observation I have had as well.

2 RP 148-49. Mr. Gallo asked if Mr. Makus or another Walla Walla defender could help with his matter in Benton County, but the judge answered that would not be possible.

The court sentenced Mr. Gallo to 106 days' confinement, all of which was covered by time already served, and imposed 12 months of community custody. The State had requested legal financial obligations (LFOs) in the amount of $3,892 but the trial court was persuaded by Mr. Makus to impose only $600 in mandatory LFOs.

Mr. Gallo appeals.

## ANALYSIS

Mr. Gallo appeals the denial of his right to self-representation as well as one condition of community custody. Because we conclude that Mr. Gallo is entitled to a new trial we do not address the challenges to his community custody condition, which can be raised, if necessary, in future proceedings.

The constitutional right of a criminal defendant to self-representation "is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing a defendant's explicit right under article I, section 22 of the Washington Constitution and implicit right under the Sixth Amendment to the United States Constitution). To waive the right to counsel, however, a criminal defendant must

7

act knowingly and intelligently. *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). He should be made aware of the dangers and disadvantages, so that the record will establish that he knows what he is doing and his choice is made with eyes wide open. *Id.* A colloquy on the record is the preferred method of ensuring an intelligent waiver of the right to counsel. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).

Trial courts must indulge in every reasonable presumption against a defendant's waiver of his right to counsel, but the presumption does not give a court carte blanche to deny a motion to proceed pro se. *Madsen*, 168 Wn.2d at 504. "A court may not deny a motion for self-representation based on grounds that self-representation would be detrimental to the defendant's ability to present his case or concerns that courtroom proceedings will be less efficient and orderly than if the defendant were represented by counsel." *Id.* at 505. Rather, the trial court may only deny a motion to proceed pro se when the request is equivocal, untimely, involuntary, or made without a general understanding of the consequences. *Id.* at 504-05. Once granted, the court may appoint standby counsel or allow for hybrid representation. *Id.* at 509 n.4.

A trial court may terminate pro se status "if a defendant is sufficiently disruptive or if delay becomes the chief motive." *Id.*; *Faretta*, 422 U.S. at 834 n.46 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."). "A court may not deny pro se status merely

8

because the defendant is unfamiliar with legal rules or because the defendant is obnoxious." *Madsen*, 168 Wn.2d at 509.

We review decisions to permit or deny self-representation for abuse of discretion. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 667-68, 260 P.3d 874 (2011). "Because the trial court has the opportunity to observe a defendant's demeanor and nonverbal conduct, appellate courts owe considerable deference to a trial court's finding in this regard." *State v. Floyd*, 178 Wn. App. 402, 410, 316 P.3d 1091 (2013). A trial court abuses its discretion when its decision is "manifestly unreasonable," was reached by applying the wrong legal standard, or is based on facts not supported by the record. *Madsen*, 168 Wn.2d at 504. Improper denial of the right to represent oneself requires reversal regardless of whether prejudice results. *Id.* at 503.

In *Floyd*, the defendant knowingly and voluntarily waived his right to counsel and, aided by standby counsel, represented himself. 178 Wn. App. at 404. At trial, he displayed limited knowledge of court procedures and the rules of evidence. *Id.* at 406. He became confused and frustrated when the trial court sustained State objections, which resulted in many disruptions and warnings by the court. *Id.* During closing argument, he referred to facts not in evidence, to which the State repeatedly objected. *Id.* Outside the presence of the jury, the trial court expressed its conclusion that the defendant was intentionally scuttling the trial, revoked his pro se status, and asked standby counsel to complete the closing argument. *Id.* at 406-07.

9

On appeal, this court was troubled that the trial court had not pursued a course of action less severe than revoking the defendant's pro se status. *Id.* at 411. Because the trial court identified the defendant's intentional obstruction and disruption of proceedings as the basis for revoking pro se status and the record contained sufficient evidence of warnings and disruptions, however, the defendant's convictions were affirmed. *Id.* at 410-12.

In this case, it is clear that Mr. Gallo's waiver of counsel was knowing and voluntary. Both Judge Wolfram and Judge Lohrmann engaged in very adequate colloquies with Mr. Gallo. No one contends otherwise.

At issue is only whether the trial court had a basis for revoking Mr. Gallo's pro se status. The State asks us to conclude that in the October 12 hearing, Mr. Gallo withdrew his request to proceed pro se or that he behaved equivocally then and thereafter. But *Madsen* made clear that equivocation is not shown where a defendant merely raises new counsel as an alternative or, after self-representation is denied, quits asking. 168 Wn.2d at 507. At most, Mr. Gallo acquiesced in the trial court's announced decision to reappoint Mr. Makus.

The State also contends that Mr. Gallo did not live up to his assurances to the court that he would be motivated, zealous, and would study up in order to be able to effectively represent himself. But this argument is premised on an incorrect legal standard. The lack of quality of self-representation does not justify a trial court's

10

revocation of pro se status. *Id.* at 505.

Finally, the State argues that Mr. Gallo engaged in manipulation and obstruction, by requesting bail and then failing to appear at court appearances. But unlike the trial court's revocation of pro se status in *Floyd*, which came after several disruptions, warnings, and delays, Mr. Gallo's pro se status was terminated without warning, after he failed to appear at two hearings. And the record suggests Mr. Gallo did not appear at one or both hearings because he was incarcerated in Benton County.

The only basis for revoking Mr. Gallo's self-representation discernable from Judge Lohrmann's statements is that Mr. Gallo needed legal advice and assistance. He expressed "grave concern" that Mr. Gallo would be unable to adequately represent himself. 2 RP at 23. While his belief that Mr. Gallo needed assistance was undoubtedly accurate (as Mr. Gallo himself would later concede), it was the wrong legal standard. Again, denial of the right to proceed pro se requires reversal even when no prejudice results. *Madsen*, 168 Wn.2d at 503.

The record on appeal does not support a lawful basis for the trial court's decision to terminate Mr. Gallo's self-representation. Application of the wrong legal standard constitutes abuse of discretion. We reverse Mr. Gallo's two convictions without prejudice to retrial of the controlled substance charges, and remand.

11

No. 33934-3-III
*State v. Gallo*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

12