**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83181-0-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | PUBLISHED OPINION |
| IVAN PATRICK SABON, | |
| Appellant. | |

HAZELRIGG, J. — Ivan Sabon appeals a jury conviction for assault in the second degree with a deadly weapon. Sabon challenges multiple rulings during pretrial proceedings and trial, several of which are independently dispositive, and seeks reversal of the conviction and remand for a new trial. As the trial court erred in denying Sabon's September 2020 motion to waive counsel and represent himself, we need not reach the remaining assignments of error. The improper denial of Sabon's right to proceed pro se requires reversal.

FACTS

On May 18, 2019, Sabon was arrested and later charged with assault in the second degree, alleged to have been committed by using a deadly weapon. Assault in the second degree is a most serious offense, alternatively referred to as a strike offense.[1] The State also advised of its intent to seek a separate deadly

---

[1] RCW 9.94A.030(32).

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

weapon sentencing enhancement. Two months later, Sabon filed a waiver of counsel along with a motion to proceed pro se, which he supported with a handwritten affidavit. At a hearing on July 16, Judge Sean O'Donnell addressed Sabon's motion and found that he was "making a knowing, intelligent and voluntary waiver of his right to counsel." Accordingly, the court entered an order authorizing the withdrawal of counsel and granting Sabon's motion to proceed pro se.

In late October, the court appointed standby counsel to assist with Sabon's motion for expert services on his potential defenses of diminished capacity and insanity. On December 6, Sabon's standby counsel was appointed to represent him without limitation because Sabon was no longer capable of proceeding pro se due to surgeries he required. In March 2020, Sabon again moved to proceed pro se, this time before Judge Patrick Oishi, but the court denied the motion, holding that Sabon's request was equivocal. The next month, Sabon's attorney was permitted to withdraw and the court ordered the King County Department of Public Defense to assign new counsel.

On September 21, Sabon again moved to waive counsel and proceed pro se. This time, his motion was heard by Judge Mary Roberts. At the hearing, Sabon explained that the "only reason" he had agreed to rescind his initial pro se status was because he had two surgeries and "it was an emergency." When Sabon began to explain that he had been suffering from untreated mental issues and assert a conflict of interest between his attorney and his expert witness, the court redirected him to the issue at hand. Sabon then stated "I want to represent myself." The court requested a reason and Sabon explained, "[b]ecause there's issues that

No. 83181-0-I/3

they ain't bringing up that I want brought up." The court asked him again why he wanted to represent himself, and Sabon repeated his answer: "Because I need to bring those issues up." Without conducting any further colloquy, the court denied the motion, finding that Sabon's request was equivocal and was not knowing, intelligent, and voluntary. In October, Sabon renewed his motion and the court again denied it after finding that the request was not knowing, voluntary, and intelligent because he was not "competent to make this choice."

The case proceeded to trial in August 2021 and the jury found Sabon guilty as charged. Sabon timely appealed.

ANALYSIS

Among his various assignments of error on appeal, Sabon argues that the trial court violated his constitutional right to self-representation by denying his requests to proceed pro se in both September and October 2020. The remedy for the denial of Sabon's right to self-representation is reversal, therefore we need not reach his other assignments of error. Because we find error as to the September 2020 ruling, we do not analyze the trial court's ruling on his renewed motion the following month.

Persons accused of crimes have a right to self-representation under both article I, section 22 of the Washington State Constitution and the Sixth Amendment to the United States Constitution. State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). "This right is afforded a defendant despite the fact that exercising the right will almost surely result in detriment to both the defendant and the administration of justice." State v. Vermillion, 112 Wn. App. 844, 850-51, 51 P.3d

- 3 -

188 (2002). An improper denial of the defendant's request to proceed pro se is reversible error as "deprivation [of this right] cannot be harmless." Id. at 851.

The trial court's denial of a defendant's motion to proceed pro se is reviewed under an abuse of discretion standard. Madsen, 168 Wn.2d at 504. An abuse of discretion occurs when a "decision is manifestly unreasonable or 'rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" Id. (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). When determining whether to grant such a request, trial courts shall "indulge in every reasonable presumption against [the defendant's] waiver" of the right to counsel. Brewer v. Williams, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242, 51 L. Ed. 2d 424 (1977). However, trial courts may only deny a defendant's request through a finding that the request is "equivocal, untimely, involuntary, or made without a general understanding of the consequences." Madsen, 168 Wn.2d at 504-05.

I. Timely and Unequivocal Request

Once a defendant moves to represent themselves, the trial court must make an initial determination as to whether the request is both timely and unequivocal. Madsen, 168 Wn.2d at 504. At this stage, the court must "focus on the nature of the request itself—if, when, and how the defendant made a request for self-representation—not on the motivation or purpose behind the request." State v. Curry, 191 Wn.2d 475, 486-87, 423 P.3d 179 (2018). The parties here do not dispute that Sabon's September 2020 request was timely. In Curry, our Supreme Court expressly adopted the Ninth Circuit's definition of what constitutes an unequivocal request for self-representation: the defendant must "'make an explicit

- 4 -

No. 83181-0-I/5

choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself.'" 191 Wn.2d at 490 (quoting United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994)).

To determine whether the request was unequivocal, the court examines the nature of the request itself, which includes considering "whether the request was made as an alternative to other, preferable options and whether the defendant's subsequent actions indicate the request was unequivocal." Curry, 191 Wn.2d at 489. A defendant's request is "not rendered equivocal by the fact that the defendant is motivated by something other than a singular desire to conduct his or her own defense." State v. Modica, 136 Wn. App. 434, 442, 149 P.3d 446 (2006), aff'd, 164 Wn.2d 83, 186 P.3d 1062 (2008). Accordingly, a defendant's request may still be unequivocal even when it is motivated by frustration with his counsel's performance. Id. at 442.

While the trial court found Sabon's September request was equivocal, the State properly concedes that it was not. The record demonstrates that there were no objections as to the timeliness of his motion, submitted well before trial commenced in August 2021, and that Sabon's request was clear and unequivocal. Sabon filed a formal written motion seeking to waive counsel and proceed pro se. His written motion expressly confirmed that he wanted to give up his right to an attorney and exercise his right to represent himself in this case, and that his decision was made knowingly and voluntarily. In his motion, Sabon stated that he understood that he was charged with the crime of assault in the second degree

- 5 -

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and also faced a separate deadly weapon enhancement, and that the maximum penalty for the charged offense was 10 years in prison and a $20,000 fine. Further, Sabon wrote that he had prior experience representing himself in other cases, as well as in an earlier stage of the current case after Judge O'Donnell had granted his original request to proceed pro se.

Additionally, Sabon told the court multiple times during the hearing on his motion that he wanted to waive his right to counsel and represent himself. He explained the only reason he had rescinded his initial pro se status was because he needed multiple surgeries and was in the hospital. Although his request to return to pro se status may have been largely motivated by frustration with his counsel's performance that does not render the request equivocal. Modica, 136 Wn. App. at 442. The court's ruling on this aspect of the inquiry was "reached by applying the wrong legal standard" and was therefore an abuse of discretion. Madsen, 168 Wn.2d at 504 (quoting Rohrich, 149 Wn.2d at 654).

II. Knowing, Voluntary, and Intelligent

If a request to proceed pro se is timely and unequivocal, as Sabon's was, the trial court must next determine whether the request was knowing, voluntary, and intelligent. State v. Burns, 193 Wn.2d 190, 203, 438 P.3d 1183 (2019). In order to waive the constitutional right to counsel, a defendant should be "made aware of the dangers and disadvantages of self-representation, so that . . . 'he knows what he is doing and his choice is made with eyes open.'" Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975) (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S. Ct. 236,

No. 83181-0-I/7

242, 87 L. Ed. 268 (1942)). To determine whether a defendant understands the risks of self-representation, the trial court conducts a colloquy on the record. Burns, 193 Wn.2d at 203. While there is no particular "script" a court must follow, or mandatory questions to be asked, our Supreme Court has indicated this colloquy should, at a minimum, address "the nature of the charges against the defendant, the maximum penalty, and the fact that the defendant will be subject to the technical and procedural rules of the court in the presentation of his case." Id.

Although Judge O'Donnell granted Sabon's initial motion to represent himself in July 2019, Sabon later rescinded his pro se status when he faced multiple surgeries. On September 21, 2020, Sabon submitted a motion to waive counsel and resume representing himself. At the hearing before Judge Roberts, Sabon explained to the court that the "only reason" he had rescinded his initial pro se status was because he had surgeries and was in the hospital for a week. When Sabon began to tell the court about the mental health issues he was experiencing at the time of the offense, and his counsel's failure to interview him about such issues, the court redirected the discussion:

> THE COURT: Let me interrupt you for just a moment, Mr. Sabon. So my understanding is that you have made a request to the Court to waive your right to counsel and represent yourself, and that that's what we're here for. Is that not what you want to do?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: So tell me why you want to represent yourself. It sounds like you might be complaining about [defense counsel] as opposed to requesting that you have no attorney. I'm not quite clear. So can you tell me what your request is?
>
> THE DEFENDANT: [Defense counsel] and the Office of Public Defense is in conflict — I'm in conflict with, and they are — they

- 7 -

denied me access to the courts. They denied me to interview an expert that I had which — which ended up being a conflict of interest that extended to the expert witness. And before I even came here, I also, you know, have substantial records to verify that I was going through delirium tremens. You know, anybody could look at it and say that I was most likely going through delirium tremens.

After Sabon further explained that he wanted the case dismissed, the court clarified it was not going to hear his motion to dismiss at the hearing.

THE COURT: So we're here for two reasons today, and the first hearing we're having is for you to make a request, if you want, to represent yourself. I'm not hearing that that's what you want to do, but this is the time for you to make that request.

THE DEFENDANT: Yeah. I want to represent myself.

THE COURT: Why?

THE DEFENDANT: I was stating the reasons why.

THE COURT: Why?

THE DEFENDANT: You want me to go over it again?

THE COURT: No. Those were not reasons to represent yourself. Those were reasons to dismiss the case or to have a different attorney, the way I heard it. What is it that makes you want to —

THE DEFENDANT: Well, either dismiss the case or let me go pro se.

THE COURT: Okay. So why do you want to waive your right to an attorney and represent yourself?

In response, Sabon explained that he was unsatisfied with his attorney's performance and felt that she did not know anything about his case. As Sabon asserted that his counsel had a conflict of interest and failed to investigate the case, the court interjected: "Mr. Sabon, why do you want to represent yourself and

not have a lawyer?" Sabon responded, "[b]ecause there's issues that they ain't bringing up that I want brought up." The interaction continued:

> THE COURT: So it sounds like you are unhappy with the representation you've received, but that's —
>
> THE DEFENDANT: My material witness, I can't even get ahold of him.
>
> THE COURT: But that's different.
>
> THE DEFENDANT: No one even looked into that.
>
> THE COURT: That's different.
>
> THE DEFENDANT: And my case was substantially insanity at the time of the commission of the crime.
>
> THE COURT: So why do you want to represent yourself?
>
> THE DEFENDANT: And it's being ignored
>
> THE COURT: Why do you want to represent yourself?
>
> THE DEFENDANT: Because I need to bring those issues up.

The court denied Sabon's motion, finding that the waiver of counsel was not made knowingly, intelligent, and voluntarily, and that Sabon's request was "equivocal at best."

In addition to the erroneous ruling on whether his request was equivocal, the trial court also erred in finding that Sabon's waiver of counsel was not knowingly, voluntarily, and intelligently made. Burns explains the requirement that a court conduct a colloquy on the record in order to determine whether a defendant understands the risks of self-representation. 193 Wn.2d at 203. When complying with this requirement, the court should, at a minimum, address "the nature of the charges against the defendant, the maximum penalty, and the fact that the

- 9 -

defendant will be subject to the technical and procedural rules of the court in the presentation of his case." Id. Here, the trial court did not engage in such a colloquy on the record. Instead, the court repeatedly asked Sabon why he wanted to represent himself. In Madsen, the trial court's colloquy was also limited to asking Madsen why he wanted to represent himself, to which Madsen replied that he thought he could resolve the case on his own. 168 Wn.2d at 506. As the trial court "failed to inquire further or identify facts suggesting that Madsen's request was legally deficient," our Supreme Court found that "the only permissible conclusion is that Madsen's request was voluntary, knowing, and intelligent." Id. at 506. Here, as in Madsen, the trial court failed to conduct a colloquy and therefore failed to elicit a proper factual basis to warrant a finding that Sabon's waiver was not knowing, voluntary, and intelligent.

The court here failed to ask any questions designed to produce facts regarding whether Sabon was making this request voluntarily, or if he understood the scope and consequences of his request. The judge appeared fixated on Sabon providing a satisfactory answer to the question of why he wanted to proceed pro se, but self-representation is a right and a simple desire to exercise that right is a legally sufficient reason. That said, Sabon provided clear responses indicating that he wanted to direct his own defense. He was concerned about the quality of his representation and detailed strategic differences which were significant to him. Just because the court may have believed Sabon's decision was unwise does not mean that it was not knowing, voluntary, and intelligent.

No. 83181-0-I/11

Notwithstanding the absence of a colloquy by the court, the State argues that the September denial was not an abuse of discretion because "a reasonable judge could determine [Sabon] was not fit to represent himself." The State here conflates an inquiry as to the competency of an accused person with a motion to exercise one's right to self-representation. As to the former, if the record contains a sufficient factual basis, "we defer to the trial court's finding that a defendant lacks the mental capacity for self-representation." State v. Smith, 13 Wn. App. 2d 807, 816, 467 P.3d 106 (2020). Although the issue of Sabon's competence had not been raised at this point in the proceedings, and the trial court made no such finding on the record, the State insists that the denial of the motion to proceed pro se was based on an implicit finding that Sabon was not competent to represent himself.[2] As a preliminary matter, we decline the State's invitation to depart from years of federal and state precedent which clearly requires some sort of colloquy on the record from which to determine whether the motion is knowingly, voluntarily, and intelligently made. The abuse of discretion standard is deferential by design, but to infer findings not articulated by the court, where the relevant jurisprudence details the nature of the requisite inquiry, is a step beyond deference. Further, even if we were to engage in such a lax inquiry in the context of a challenge based on a constitutional right, the record here leads only to a conclusion of error by the trial court.

---

[2] Wash. Court of Appeals oral argument, *State v. Sabon*, No. 83181-0-I (Sept. 29, 2022), at 13 min., 40 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2022091083/?eventID=2022091083.
While the court expressly noted in its ruling on Sabon's October 2020 motion to waive counsel and represent himself that it did not believe Sabon "was competent to make this choice," there was no such language regarding competency with regard to the ruling on his September 2020 motion.

- 11 -

No. 83181-0-I/12

The State urges us to consider: (1) a psychological report in the court file from a defense expert who noted that Sabon had some impaired cognitive functions, (2) Sabon's inability to effectively represent himself at an earlier stage in this case (presumably during the time when he had standby counsel), and (3) Sabon's frequent verbal outbursts during pre-trial hearings and throughout the trial. As we only consider the evidence that was before the trial court at the time of the denial of the September motion, Sabon's conduct during later hearings and throughout trial is not part of our inquiry. Without a proper colloquy, the record is plainly insufficient to support a finding that Sabon was incompetent to represent himself.

The State relies on Indiana v. Edwards, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008), In re Pers. Restraint Pet. of Rhome, 172 Wn.2d 654, 260 P.3d 874 (2011), and State v. Smith, 13 Wn. App. 2d 807, 467 P.3d 106 (2020), in furtherance of its position. However, none of these cases support the trial court's decision to deny Sabon's request without either performing a proper colloquy or ordering a competency evaluation. In Edwards, the United States Supreme Court acknowledged that an individual with "severe mental illness" may be competent to stand trial but incapable of proceeding pro se. 554 U.S. at 178. Thus, the Court held that the "Constitution permits judges to take a realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." Id. at 177-78.

Subsequently, in Rhome, our Supreme Court addressed whether the trial court erred in granting a pro se request from a defendant with multiple psychiatric

- 12 -

disorders. 172 Wn.2d 654. Although Rhome had a history of mental illness, he had previously been found competent to stand trial, and the trial court conducted a proper colloquy on the record before authorizing Rhome to waive his right to counsel. Id. at 668. The Court explained that a "trial court may consider a defendant's mental health history and status when competency has been questioned, even where the defendant has been found competent to stand trial." Id. at 667. However, it went on to conclude that the trial court did not abuse its discretion in finding that Rhome's waiver was knowing and intelligent, and allowing him to represent himself. Id. at 669.

Relying on Rhome, Division Three of this court affirmed the conviction of a defendant who was denied the right to represent himself even though two competency evaluations had concluded that he was competent to stand trial. Smith, 13 Wn. App. 2d at 817. In so ruling, we highlighted a subsequent medical examination which concluded that Smith's mental capacity was impaired to the point that he lacked impulse control. Id. As "[i]mpulse control was an important consideration in the trial court's finding that Smith lacked the mental capacity to represent himself", we concluded it was not an abuse of discretion for the trial court to deny Smith's motion to proceed pro se. Id.

Neither Rhome nor Smith are applicable here. Unlike Rhome, who was authorized to waive counsel after the court found him competent to stand trial, Sabon was denied the right to represent himself without having undergone a competency evaluation. Unlike Smith, who underwent two competency evaluations due to concerns of his mental capacity, the issue of Sabon's

- 13 -

No. 83181-0-I/14

competence had not even been raised at the time of the September denial. As our Supreme Court explained in Madsen, although incompetency is a valid basis to find that a pro se request was not made voluntarily, knowingly, and intelligently, the trial court is required to order a competency evaluation if the colloquy leads to such concerns. 168 Wn.2d at 510.

Ultimately, by failing to engage in a proper colloquy, the trial court has left us with a record that does not show anything other than an unequivocal and knowing, voluntary, and intelligent request to proceed pro se. If the judge had concerns about Sabon's competency to make the decision to represent himself, then the court should have conducted an inquiry on that matter or ordered an evaluation. Because it failed to apply the applicable legal standard set out in case law, the trial court abused its discretion in denying Sabon's motion to exercise his right to self-representation.

Accordingly, we reverse.

_____

WE CONCUR:

_____        _____
Coburn, J.                           Mann, J.

- 14 -