IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34963-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SCOTT EMERSON EVATT, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Scott Evatt was convicted of third degree assault and unlawful use of drug paraphernalia following a bench trial in which he was allowed to represent himself. Represented by counsel on appeal, he argues that the trial court erred or abused its discretion in (1) not ordering a second competency examination after the prosecutor expressed her belief that he might need reevaluation, (2) allowing Mr. Evatt to represent himself without reevaluation by a Western State Hospital psychologist, and (3) imposing a sentence in excess of the statutory maximum for third degree assault. In a pro se

statement of additional grounds, Mr. Evatt contends that six discrete errors, along with cumulative error, deprived him of a fair trial.

The State concedes that Mr. Evatt's sentence, including the mandatory community custody imposed, exceeds the statutory maximum for third degree assault. We affirm the convictions but remand for resentencing.

FACTS AND PROCEDURAL BACKGROUND

At around 9:30 p.m. on July 6, 2015, two Tacoma police officers traveling together and one sergeant, traveling separately, responded to a report of a suspicious individual, later identified as Scott Evatt. They arrived at his location at about the same time. Mr. Evatt did not initially comply with their verbal commands to stop walking away from them, but soon did. He dropped to his knees, intentionally dropped a glass methamphetamine pipe within full view, and submitted to being handcuffed. Mr. Evatt had been released from jail three days earlier, was struggling with homelessness, and dropped the pipe with the hope of being arrested for possession of drug paraphernalia. He was aware it was only a misdemeanor, but expected it would get him to jail and "a nice place to sleep." Report of Proceedings (RP) (Trial)[1] at 422. He cooperated with the

---

[1] Three independently-paginated verbatim reports of proceedings were provided that we refer to, respectively, as RP (Pretrial) (hearings taking place between July 14 and October 28, 2015), RP (Trial) (trial proceedings taking place between December 10 and 21, 2015), and RP (Sentencing) (the sentencing hearing taking place on December 23, 2015).

two patrol officers, allowing them to lead him to their car. At that point the sergeant left to speak with the party who had called 911 to express concern about Mr. Evatt.

Mr. Evatt was searched by the patrol officers incident to the arrest, was read *Miranda*[2] warnings, agreed to speak with the officers, and admitted he had smoked methamphetamine earlier in the day using the pipe they had seized.

According to Mr. Evatt, the two patrol officers obtained his Qwest card (presumably during the search), which he later described as his "ID." RP (Trial) at 429. Mr. Evatt believed that one of the officers made a statement about how, if they took his ID away, they could make him "disappear." *Id.* at 425. The trial court would later find that Mr. Evatt's methamphetamine use could explain delusions Mr. Evatt experienced at this point and thereafter. Mr. Evatt admitted that in addition to smoking earlier, he swallowed a sealed baggie of methamphetamine he was carrying when he first saw the officers' patrol cars approaching, in order to avoid being found in possession and subject to a felony charge.

Whatever Mr. Evatt's reason for perceiving he was in danger of "disappearing," he responded to the threat by bracing himself against the exterior of the patrol car and resisting the officers' verbal and physical efforts to get him into the car. When officers finally forced him into the back seat through the passenger's side door, he managed to

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

roll to the driver's side door, which was open. Both officers ran around to that door to stop him from escaping, and the first to arrive was kicked in the chest by Mr. Evatt and stumbled backward. As Mr. Evatt tried to leave through the open door, his legs were grabbed by one or both of the officers and he fell forward, hitting his face either on the floor board of the patrol car or the ground. During the melee, one of the officers radioed for support and the sergeant quickly returned and assisted in restraining Mr. Evatt so that a hobble could be placed on his legs.

Once hobbled, Mr. Evatt was placed in the back seat of the patrol car, where he claims to have heard snatches of conversation between the officers about having tracked him, using something placed in his eye in 2006. The Tacoma Fire Department was contacted for medical care for Mr. Evatt's injuries from his fall, and he told responding medics about having swallowed the methamphetamine. He was transported to Tacoma General Hospital in an ambulance. One of the patrol officers rode along in the ambulance and, according to Mr. Evatt, continued whispering things to frighten him. Mr. Evatt was soon cleared by the hospital, after which he was taken to the jail and booked.

Mr. Evatt was charged with third degree assault, obstructing a law enforcement officer, and unlawful use of drug paraphernalia.

A little over a week after his arrest, in a pretrial hearing before the Honorable Jack Nevin at which appointed counsel David Shaw, was present, Mr. Evatt moved to represent himself. Judge Nevin commented that Mr. Evatt had represented himself

4

before the judge on a prior occasion. To address the motion for self-representation, Judge

Nevin read through questions from a prepared *Faretta*[3] inquiry, in response to which Mr.

Evatt indicated, among other things, that he was aware of the charges against him, had

represented himself in proceedings in the past, and had read through rules of evidence

and criminal procedure more than once. Asked by the court why he wanted to represent

himself, Mr. Evatt answered that he had some type of proceeding pending against the

Pierce County Department of Assigned Counsel (DAC) that gave rise to a conflict with

anyone with the DAC. He also identified two lawyers from outside DAC whose

representation he had found objectionable. He said he would prefer to represent himself

until the court could assign counsel that did not have a conflict of interest.

At this point, Mr. Shaw suggested to the court that a "1077" was needed, referring

to chapter 10.77 RCW, which deals with criminal insanity, including examinations to

determine competency to stand trial. RP (Pretrial) at 7. Mr. Shaw pointed out that Mr.

Evatt had "had several" 1077s. *Id.* Asked to respond, Mr. Evatt said "I've already done

this like over ten times, your Honor," and characterized the request for a 1077 as a DAC

"stall tactic." RP (Pretrial) at 7-8. After hearing from Mr. Evatt and Mr. Shaw, the judge

ordered a competency examination by Western State Hospital.

---

[3] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

Dr. Mark Duris conducted the evaluation of Mr. Evatt several days later, on July 17. His single-spaced, five-page report indicated that he reviewed Mr. Evatt's history of hospitalization at Western State, his history of contacts with the Pierce County Regional Support Network, and, among other materials, reviewed four other forensic mental health evaluations of Mr. Evatt performed by Western State Hospital between 2007 and 2015, all of which had found him competent to stand trial. Mr. Evatt's diagnoses had ranged from "Bipolar 1 Disorder, Antisocial Personality Disorder, 'Refusal of Treatment,' Cocaine Dependence, Drug Dependence, and Drug Abuse." Clerk's Papers (CP) at 12.

Dr. Duris described Mr. Evatt's thought processes as "grossly normal," with "no thought derailment," and with a "rate of . . . thought . . . within normal limits and . . . without thought blocking." *Id.* On issues related to delusion, his report stated:

> He reported no current experience of auditory or visual hallucinations but gave evidence of some delusional thinking by his claiming, "they did a movie about me called RETRO". He further evidenced paranoia of the police based on his alleging that several officers in 2006 kidnapped and tortured him. His recall for this alleged incident appeared vague, saying that he lost memory for a period and attributes this loss of time to the police who conspired with the help of his brother. Aside from this, the overall content of his thought was not delusional. No obsessive thought content was noted. His insight and judgment based on responses to questions related to everyday social problems, and daily living activities, and as assessed by questions related to this interview was intact.

*Id.*

Dr. Duris's report stated that Mr. Evatt confirmed, as he had reported in the past, that cocaine and meth "cause him to experience psychotic symptoms inclusive of

6

paranoia." *Id.* at 13. He concluded that a diagnosis of Substance Induced Psychotic Disorder was indicated for the psychotic-like symptoms (delusions and paranoia) reported by Mr. Evatt, and while Mr. Evatt had a significant history of substance abuse disorders, "what is important for the purpose of this competency evaluation is that his diagnoses do not appear to impair significantly his behavior, knowledge, and reasoning ability." *Id.* For reasons explained in more detail in his report, he concluded that Mr. Evatt "possess[ed] the basic and fundamental capacity to rationally participate in his own defense *with or without* counsel." *Id.* at 14 (emphasis added).

Following receipt of Dr. Duris's report, Judge Nevin entered an order on July 29 finding Mr. Evatt competent to stand trial.

The issue of whether Mr. Evatt would be allowed to proceed pro se was taken up again by Judge Nevin at a hearing on August 5. The judge repeated the *Faretta* inquiry he had begun on July 14 and this time, completed it. At its conclusion, he orally ruled that Mr. Evatt knowingly, intelligently, and voluntarily waived the right to counsel and would be allowed to represent himself. Although Mr. Evatt initially objected to Mr. Shaw serving as his standby counsel, he eventually agreed to accept his help "just until I get an investigator assigned to me." RP (Pretrial) at 29.

At a hearing two days later, Judge Nevin heard the State's request that he reconsider his order granting Mr. Evatt's request to proceed pro se. The prosecutor argued at length that whether Mr. Evatt was competent to stand trial was different from

7

whether he was competent to represent himself. When the court had the opportunity to respond, it made clear that it fully understood they were two different issues. RP (Pretrial) at 44 ("[W]hat we're talking about here is Mr. Evatt's competen[ce] to represent himself, which is, you're correct, a different question than is he competent to assist counsel."). While Judge Nevin stated he disagreed with "the trend of the law in the State of Washington" on the right of even mentally ill criminal defendants to represent themselves, he acknowledged that a "veritable [tidal] wave of cases in the State of Washington" recognized the self-representation right. *Id.* at 44-45. He also took into consideration Dr. Duris's report and conclusion that Mr. Evatt was capable of rationally participating in his own defense without counsel.

The prosecutor then expressed her view that Dr. Duris might only have been repeating Mr. Evatt's report that he had represented himself in the past rather than expressing his own view. *Id.* at 45. Judge Nevin expressed willingness to consider a clarifying affidavit or supplemental report from Dr. Duris or to hear testimony from him at a hearing to be held in Mr. Evatt's case the following Wednesday, all of which the prosecutor identified as evidence she might procure. But the judge also stated, "As we sit here today, Mr. Evatt is appearing pro se." *Id.* at 48-49; 55.

On the following Wednesday, August 12, the court entered a number of orders on pending motions. Dr. Duris was not present, nor had he provided anything to clarify his statement that Mr. Evatt was capable of rationally participating in his own defense

8

without counsel. The prosecutor represented that she had been in touch with the doctor, provided him with some of Mr. Evatt's filings in the case, "which caused him to wish to reevaluate his position as well as mentioning to him that this court has presided over a prior trial." *Id.* at 60. She concluded, "I will need to coordinate that with Western State and obtain an order from the court," later adding that the State "is reserving the motion regarding revisiting [Mr. Evatt's] ability to [proceed] pro se." *Id.* at 60; 62. Judge Nevin made no comment on the prosecutor's proposed course of action.

Mr. Evatt had filed a pro se opposition to the State's challenge to his self-representation in which he stated, in part, "It[ i]s illegal, to keep me from defending myself, with no proof, of me being unable to defend myself, or to voluntarily waive assigned counsel." CP at 21. He claimed, "I . . . have successfully, defended myself, for over fifteen years, on over 10 dropped felonies, that officers in Pierce County have illegally, put on me." *Id.* at 23 (emphasis omitted). Inasmuch as the State was not requesting relief on the self-representation issue on August 12, the court did not hear argument from Mr. Evatt.

Trial of Mr. Evatt's case was continued several times and was eventually set to begin on December 10, 2015. The State filed no further request that the court reevaluate Mr. Evatt's self-representation nor did the State raise any further concern at a hearing before Judge Nevin on October 28, 2015. The case was assigned for trial to Judge Kitty-Ann Van Doorninck.

9

Mr. Evatt waived a jury and the bench trial took place over a period of five trial days. On December 10, Judge Van Doorninck heard motions. In providing the judge at the outset with a brief history of proceedings, the prosecutor stated that Mr. Evatt was found competent to proceed to trial but "[w]e have never truly fleshed out or addressed the issue of how that may or may not differ from the issue of being competent to represent one's self." RP (Trial) at 3-4. Based on the record before us on appeal, this was not a fair characterization of prior proceedings. Judge Nevin never exhibited confusion over the difference between competence to stand trial and the ability to knowingly and intelligently waive representation by counsel. He always addressed them separately in argument and in his orders, and even candidly expressed his unhappiness with controlling law that allows competent mentally ill defendants to knowingly and intelligently waive their right to counsel.

After the prosecutor's passing reference to the self-representation issue, she did not request a reevaluation of Mr. Evatt or reconsideration of the order permitting him to appear pro se. In fact, after Judge Van Doorninck reviewed Mr. Evatt's long-standing request to fire Mr. Shaw as his standby counsel, the judge asked the prosecutor if she had any objection to the judge excusing Mr. Shaw, to which the prosecutor responded, "I follow where the Court is going. I don't think the Court can impose stand-by counsel, therefore the State does not object." *Id.* at 22.

10

Opening statements and testimony began on the morning of December 15 and continued on the 16th, 17th, and 21st. The court heard from five witnesses: the three officers; Dr. Miguel Balderrama, who had attended to Mr. Evatt at the jail; and Mr. Evatt. Judge Van Doorninck heard closing arguments on the morning of the 21st and announced oral findings.

Mr. Evatt's version of events at trial was that he was always compliant with the officers up until he became fearful about being placed in the car and taken someplace to "disappear." He denied that he was ever in the back seat of the patrol car before being injured and hobbled. According to him, as soon as the sergeant left the scene of his arrest, the two patrol officers assaulted him. He contended that city police and county sheriffs in Pierce County do not like him and continually harass him. He argued that he could have proved the harassment if his investigator had obtained records of over 100 arrests that he had hoped to present as evidence. He further contended the patrol officers made up the allegation that he kicked one of them in order to explain to their sergeant why, when the sergeant returned to the scene of what had been a peaceable arrest, Mr. Evatt was being held down and had injuries to his face.

Virtually all of Mr. Evatt's testimony, questioning, and argument focused on this

defense theory and on his effort to show inconsistencies in the three responding officers' versions of events.[4]

At several points in pretrial proceedings and at trial, Mr. Evatt exhibited delusional and paranoid thinking about having been kidnapped and tortured by police in 2006, as he had reported to Dr. Duris. On August 5, he evidently filed a motion asking to be transported to a hospital for a blood test and an X-ray of his skull, which he contended would reveal that when he was kidnapped in 2006 the police had stitched something into his right eye that they later used to track him. He spoke on a couple of occasions about his belief that an alleged "temporary filling" placed in one of his teeth following his July 2015 arrest was something else, because it was square and had been placed in a healthy tooth. RP (Trial) at 406-07. He claimed that a glucose shot given to him in the ambulance following his arrest had caused abscesses on his lower back.

---

[4] Hammering on inconsistencies in the testimony of State witnesses was also Mr. Evatt's favored trial strategy in a trial before Pierce County Judge Timothy P. Larkin, who allowed Mr. Evatt to represent himself after finding that he knowingly, intelligently, and voluntarily waived his right to counsel. *See State v. Evatt*, noted at 150 Wn. App. 1012 (2009). The unpublished decision is not cited as precedent; we simply take note of the adjudicative fact that Mr. Evatt was allowed to represent himself and employed a similar strategy. Under ER 201(c), courts may take judicial notice of adjudicative facts. There is a distinction between consulting the record of another case to determine whether it contains something and consulting the record to determine whether disputed facts were found to be true. 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 201.9 (6th ed. 2016).

12

While he claimed to believe these things, he also appears to have understood that no one else believed them, acknowledging to Judge Van Doorninck at one point, "I know it sounds crazy, but I'm telling you. I know it for a fact, I'll stake my life on it, that there's something stitched in my eye cavity." *Id.* at 404. He even stated, "[I]f I have to pop my eyeball out to prove it to the Court, I will. I will go with one eye before I go out there any more and deal with these cops tracking me." *Id.* at 403-04.

For the most part, however, Mr. Evatt heeded the court's instruction to focus on what happened on the night of July 6, 2015. His delusional statements about other matters, although a focus of Mr. Evatt's appeal, appear in no more than 20 pages of the 620-page trial transcript.[5] He focused instead on what he argued was the implausibility of the patrol officers' story, emphasizing the facts that (1) he wanted to be arrested, (2) he would not have taken the chance of assaulting officers armed with tasers and guns, and (3) two large, able-bodied, officers could not possibly have had as much trouble with a handcuffed suspect as they claimed to have had with him.

At the conclusion of trial, the court dismissed the obstruction charge but found Mr. Evatt guilty of the uncontested use of drug paraphernalia charge and the charge of third degree assault. The judge orally ruled that she did not believe the officers ever made threatening statements about making Mr. Evatt disappear, but Mr. Evatt believed they

---

[5] *See* RP (Trial) at 13-18, 35, 39, 403-04, 406-07, 428-34, 601.

did, was frightened, and his fear explained why he did not want to get into the patrol vehicle. After she announced her decision, Mr. Evatt repeatedly expressed frustration that she believed the officers rather than him until she cut him off, saying "I'm not going to argue with you anymore," and recessed. RP (Trial) at 619.

At sentencing two days later, Mr. Evatt appeared in a suicide smock and with a bandaged left eye. The prosecutor reported to the court that according to jail staff, Mr. Evatt had become very agitated the night before about something placed in his eye and had injured it. RP (Sentencing) at 4-5. Asked by Judge Van Doorninck what was going on with his eye, Mr. Evatt explained that he had tried to pull it out because no one believed that something had been implanted in it by police. *Id.* at 6-8. While Judge Van Doorninck commented on why she believed Mr. Evatt was "competent to proceed, as you have been all throughout these proceedings," she took a break to have him meet with the jail's mental health professional. *Id.* at 13. After the jail mental health professional reported to Judge Van Doorninck that he believed Mr. Evatt could proceed with sentencing, the judge explored sentencing options with Mr. Evatt at length. She ultimately sentenced him to 51 months' confinement and 12 months of community custody for the assault conviction, observing, "I'm worried for you. And frankly, I think you need the structure of the Department of Corrections." CP at 77-78; RP at 44. She entered a separate 90-day sentence for the misdemeanor use of drug paraphernalia conviction.

14

Mr. Evatt appeals his conviction for third degree assault and the length of his sentence.

## ANALYSIS

I. <u>Competency to stand trial and knowing and intelligent self-representation</u>

Represented by counsel on appeal, Mr. Evatt first argues that his due process rights were violated when the trial court allowed him to proceed to trial and represent himself without ordering a competency reevaluation "once the court learned . . . that Dr. Duris wished to reevaluate Evatt." Br. of Appellant at 24.

### *Competency to stand trial*

"No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050; *State v. Heddrick*, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). A defendant "is competent to stand trial if he has the capacity to understand the nature of the proceedings against him and if he can assist in his own defense." *State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985); RCW 10.77.010(15). Whenever there is reason to doubt a defendant's competency, RCW 10.77.060(1)(a) requires the trial court to order a qualified expert or professional to evaluate and report on the defendant's mental condition.

A determination of competency (or here, a redetermination) is not required merely because a request for such a determination is made, and the request is not sufficient in and of itself to raise a doubt concerning competency. *State v. Lord*, 117 Wn.2d 829, 901,

15

822 P.2d 177 (1991), *aff'd*, 161 Wn.2d 276, 165 P.3d 1251 (2007) (citing *Seattle v. Gordon*, 39 Wn. App. 437, 441, 693 P.2d 741 (1985)). A motion for such a determination or redetermination must be supported by a factual basis; only then will the court inquire to verify the facts. *Id.* A trial court decision that need for a competency hearing has not been shown is reviewed for abuse of discretion. *Id.* at 901, 903-04.

Judge Nevin granted Mr. Shaw's request for a competency examination even though Mr. Evatt objected that "I've already done this like over ten times, your Honor," and even though the judge recalled that Mr. Evatt had been found competent to stand trial the year before, when Mr. Evatt faced charges in his court. RP (Pretrial) at 7. After receiving Dr. Duris's forensic report, Judge Nevin entered an order on July 29 finding Mr. Evatt competent to stand trial—an order that Mr. Evatt does not challenge. He argues only that after the prosecutor raised her concern and Dr. Duris's alleged concern thereafter, the trial court abused its discretion by continuing to rely on what Mr. Evatt refers to as Dr. Duris's "outdated" report prepared several weeks earlier. Br. of Appellant at 31.

Even the prosecutor never questioned Mr. Evatt's competency to stand trial following Judge Nevin's July 29 order. She merely asked the judge to revisit Mr. Evatt's self-representation. We do not read the record, as Mr. Evatt claims to, as revealing that Judge Nevin continued to doubt Mr. Evatt's competency. No one ever asked the judge to

16

order a reevaluation of Mr. Evatt's competency to stand trial. Mr. Evatt fails to

demonstrate any reason why the judge should have done so sua sponte.

### *Knowing and voluntary self-representation*

The United States Constitution's Sixth Amendment right to counsel carries with it

the implicit right to self-representation. *Faretta*, 422 U.S. at 832. Article I, section 22 of

the Washington Constitution creates an explicit right to pro se representation. *State v.*

*Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). "The existence of two competing

and contradictory rights [to counsel and to self-representation] often leaves trial judges in

a very difficult position." *State v. Lawrence*, 166 Wn. App. 378, 390, 271 P.3d 280

(2012). "When the would-be pro se defendant also suffers from mental illness issues, the

trial court is presented an even more difficult problem." *Id.* Nevertheless, well settled

law respects the right of a mentally ill individual to make a knowing and voluntary

decision to represent himself in a criminal trial.

A defendant whose competency to stand trial has been questioned must knowingly

and intelligently waive the right to counsel. *In re Pers. Restraint of Rhome*, 172 Wn.2d

654, 663, 260 P.3d 874 (2011). Whether there has been an intelligent waiver of counsel

is an ad hoc determination that depends on the particular facts and circumstances of the

case, including the background, experience and conduct of the accused, which may

include a history of mental illness. *Id.* A thorough colloquy on the record is the

preferred method of ensuring an intelligent waiver of the right to counsel. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).

"A court may not deny a motion for self-representation based on grounds that self-representation would be detrimental to the defendant's ability to present his case or concerns that courtroom proceedings will be less efficient and orderly than if the defendant were represented by counsel." *Madsen*, 168 Wn.2d at 505. It may only deny a motion to proceed pro se when the request is equivocal, untimely, involuntary, or made without a general understanding of the consequences. *Id.* at 504-05.

We review decisions on self-representation for an abuse of discretion, reversing only when the decision was "'manifestly unreasonable'" because the court applied the wrong legal standard or based its decision on facts not supported by the record. *Rhome*, 172 Wn.2d at 668 (quoting *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009)). "Because the trial court has the opportunity to observe a defendant's demeanor and nonverbal conduct, appellate courts owe considerable deference to a trial court's finding." *State v. Floyd*, 178 Wn. App. 402, 410, 316 P.3d 1091 (2013). The burden of proof is on a defendant who contends his right to counsel was not competently and intelligently waived. *State v. Hahn*, 106 Wn.2d 885, 901, 726 P.2d 25 (1986).

Here, as with the challenge to the competency finding, Mr. Evatt focuses not on Judge Nevin's original decision granting him pro se status but on a reevaluation he contends was required in early August because of the prosecutor's concern, Dr. Duris's

18

ostensible concern, and Judge Nevin's own lingering concern that mentally ill criminal defendants should be represented by counsel.

The prosecutor never presented an affidavit or supplemental report from Dr. Duris or brought him to court to testify; she only told Judge Nevin on August 12 that copies of filings she provided to the doctor "caused him to wish to reevaluate his position" and that the doctor "seems to be of [the] opinion [that a reevaluation seems prudent]." RP (Pretrial) at 60. Yet in *Hahn*, our Supreme Court rejected the notion that expert input was needed to determine whether a mentally ill individual's waiver of counsel is knowing and intelligent. 106 Wn.2d at 896 (noting the court of appeals' mention of further psychiatric or psychological testimony and "declin[ing] this suggestion"). Mr. Evatt provides no legal authority that required Judge Nevin to take action based on the prosecutor's hearsay report of Dr. Duris's thinking or her mention of her plan (a plan she later abandoned) to file a motion for another evaluation.

As for Judge Nevin's expressed reservations about the law, we read his comments as those of a jurist carefully following controlling law that he does not like, but to which he has given a great deal of thought and intends to follow, as evidenced by the following comments on August 5:

> I don't like, with due respect to the higher courts in our land, this edict I follow as best I can. I don't like the current state of the law in the State of Washington as it relates to the seemingly unfettered ability [of criminal defendants] to represent themselves. But with due respect to Mr. Evatt, and due respect to you, sir, Mr. Evatt tried a case in my court, totally

19

appropriate, wrote briefs, oral argument, it is okay, I believe he is ill. And if ever there was a case where I have had consternation about whether something is knowing, intelligent, and voluntary, and where I have been tempted to go against what seems to be an overwhelming [tidal] wave from the appellate courts, it is in his case. I'm still open to being persuaded to the contrary. But this is just something that I've reflected upon after having seen Mr. Evatt again.

So if you were to note a motion and you wish to explore this, I am more than willing to listen to this.

RP (Pretrial) at 28.

We do not assume, as the dissent does, that Judge Nevin failed to read cases and does not understand the law. It is unsurprising, wanting Mr. Evatt to be well defended, that the judge was somewhat frustrated by the following principles he was constrained to apply:

- The grounds that allow a court to deny a defendant the right to self-representation are limited to a finding that the defendant's request is equivocal, untimely, involuntary, or made without a general understanding of the consequences. *Madsen*, 168 Wn.2d at 504-05.

- Such a finding must be based on some *identifiable fact*. *Id.* at 505 (emphasis added).

- A court may not deny a motion for self-representation based on grounds that self-representation would be detrimental to the defendant's ability to present his case. *Id.*

- Similarly, concern regarding a defendant's competency alone is insufficient; if the court doubts the defendant's competency, the necessary course is to order a competency review. *Id.*

- While the law provides for judges to be sensitive to mental health issues when considering whether to allow a waiver of counsel, "this does not translate into a heightened standard for waiver of counsel and pro se

20

representation when there are mental health issues present." *Rhome*, 172 Wn.2d at 666.

- If a lengthy colloquy with a defendant establishes an intelligent waiver of the right to counsel and the trial court denies a request for self-representation, "it would [be] subject to reversal under the *Faretta* standards." *Hahn*, 106 Wn.2d at 901.

- "Under *Faretta* and [*State v.*] *Coristine*, forcing an unwanted defense on a criminal defendant may in many cases slip into a violation of the Sixth Amendment. *State v. Floyd*, 178 Wn. App. 402, 412, 316 P.3d 1091 (2013) (citing *Faretta*, 422 U.S. at 819-21; *State v. Coristine*, 177 Wn.2d 370, 376-77, 300 P.3d 400 (2013)).

- The unjustified denial of this right [to self-representation] requires reversal. *State v. Stenson*, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997).

We also disagree with the dissent's inference that Judge Nevin felt bound to take his lead from Dr. Duris. A more reasonable inference is that the judge knew from the foregoing authority that he had to have an identifiable reason for finding Mr. Evatt's request was equivocal, untimely, involuntary, or made without a general understanding of the consequences, and—given the judge's own history with Mr. Evatt and Dr. Duris's evaluation—he was at a loss to identify a reason.

The dissent contends that a defendant's right of self-representation "is far from absolute," relying heavily on settled law that all reasonable inferences must be indulged against waiver of the right to counsel. Dissent at 2. It sometimes seems to be saying "all reasonable inferences must be indulged against *self-representation*." That is clearly not the case; as observed in *Madsen*, "[T]he presumption [against waiver of the right to counsel] does not go so far as to eliminate the need for any basis for denying a motion for

21

pro se status. Were it otherwise, the presumption could make the right itself illusory." 168 Wn.2d at 505.

The dissent also makes the unwarranted assumption that it was Judge Nevin who dropped the ball on an open question of Mr. Evatt's competency to represent himself, rather than the prosecutor who dropped the issue. If this were a personal restraint petition supported by some evidence that Judge Nevin dropped the ball, it would be a different matter. But this is a direct appeal, with a record suggesting the issue was abandoned by the State. We should not speculate otherwise.

Judge Nevin's candor does not cause us concern that he misunderstood the law or abused his discretion. It convinces us that he was scrupulous in applying the law.

We also have a factual disagreement with the dissent's characterization of Mr. Evatt as so severely mentally ill and incapable of presenting his defense that his trial became the type of humiliating spectacle that the United States Supreme Court tells us can justify a trial court's refusal to accept a waiver of counsel. *Indiana v. Edwards*, 554 U.S. 164, 176-78, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008). In *Rhome*, the petitioner supported his collateral attack with expert testimony that his mental illness led him to engage in incoherent and intimidating questioning and to fail to regulate his emotions or behavior in an appropriate manner. Our Supreme Court still denied relief. The only expert testimony in our record, that of Dr. Duris, reached an opposite conclusion about Mr. Evatt.

22

The dissent exaggerates Mr. Evatt's deficits. Judge Nevin stated that Mr. Evatt's "demeanor in trial" in an earlier case in which he represented himself "by and large was appropriate" even though symptoms of mental illness manifested themselves during trial. RP (Pretrial) at 10. And Judge Van Doorninck commented during sentencing that Mr. Evatt had understood the proceedings, had been capable of understanding what was going on and advocating for himself, and described him as an "excellent advocate for himself." RP (Sentencing) at 18.

Finally, like Mr. Evatt, the dissent attaches great significance to Mr. Evatt's self-inflicted injury after he was found guilty. Mr. Evatt's report of what he attempted to do was disturbing to Judge Van Doorninck and is disturbing to us, although, to be clear, the sentencing transcript provides almost no information on the extent of the injury. For obvious reasons, reversing a conviction based on an offender's mentally ill behavior *after* an adverse verdict is problematic.

Judge Nevin's *Faretta* inquiries were sufficient. The judge had experienced Mr. Evatt's self-representation firsthand. Mr. Evatt occasionally referred before trial and during trial to what everyone but him believes are delusions about things that have been done to him by law enforcement in Pierce County. He had referred to the delusions when being evaluated by Dr. Duris as well, and the doctor concluded that Mr. Evatt suffered a "Substance Induced Psychotic Disorder" that did "not appear to impair significantly his behavior, knowledge, and reasoning ability." CP at 13. Mr. Evatt had a rational theory

23

of defense, was able to track and respond to questions and directions from the court and objections by the State, seldom interrupted, and almost always tried to be respectful. His difficulty in questioning witnesses was typical of pro se parties. At issue is only whether Mr. Evatt did not knowingly and intelligently waive his right to counsel. Mr. Evatt fails to meet his burden of demonstrating that he did not.

## II. Excessive sentence

Mr. Evatt argues, and the State concedes, that the trial court imposed a sentence that exceeds the statutory maximum.

Under RCW 9A.20.021(1), a defendant's sentence cannot exceed the statutory maximum term for the class of crime for which the offender was convicted. The terms of confinement and community custody are both included in the calculation of the statutory maximum term, and it is the combination that must fall within the maximum. RCW 9.94A.505(5); *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). Trial courts must reduce the community custody term "whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021." RCW 9.94A.701(9).

The statutory maximum for third degree assault, a class "C" felony, is 60 months. RCW 9A.36.031(2); RCW 9A.20.021(c). Mr. Evatt's combined prison time and community custody is 63 months, which exceeds the limitation. Resentencing is required.

24

### III. Waiver of appellate costs

Mr. Evatt asks us to waive appellate costs if the State substantially prevails, based on his indigence and mental illness. We decline to address the issue, without prejudice to Mr. Evatt's opportunity under RAP 14.2 to demonstrate his current and likely future inability to pay to our court commissioner.

### STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Evatt raises six. Some rely on trial exhibits that are the subject of a RAP 9.6(a) motion to supplement the record, which we grant.

*Deficient investigative support.*[6] Mr. Evatt contends his court-appointed investigator "sold him out" by not using questions Mr. Evatt gave him to use in deposing the three officers and by not obtaining Mr. Evatt's complete arrest history. SAG at 2. To demonstrate ineffective assistance, Mr. Evatt must show what he requested and when; what the investigator did or attempted to do; and that the investigative efforts, if performed, would in fact have provided usable or admissible information that could have changed the outcome. None of this information is in the record of this appeal; all that appears in the record are Mr. Evatt's complaints. If Mr. Evatt is able to obtain evidence on these issues of deficient performance and prejudice, his remedy is to seek relief by

---

[6] Mr. Evatt's first and second assignments of error are combined.

25

personal restraint petition. *See State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

*Prosecutorial misconduct.* Mr. Evatt claims the prosecutor committed prosecutorial misconduct by providing late discovery. He argues that the refusal to provide him with original X-rays and the State's failure to deliver other requested discovery until four days before trial deprived him the opportunity to prepare a defense and violated his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution and his rights under article I, sections 3 & 22 of the Washington Constitution. He also argues that his booking photo, requested in discovery, was purposely overexposed in order to hide his injuries.

Mr. Evatt raised the same objections in the trial court, requesting sanctions and a continuance. Judge Van Doorninck did not order production of the original X-ray because she would be unable to read it, but she did order the State to produce the X-ray report. She ruled that no continuance was necessary given the four months Mr. Evatt had to prepare for trial and the four days before trial he had to review the medical records and booking photo. The booking photo was admitted into evidence during the testimony of one of the patrol officers, who testified that it accurately and fairly depicted Mr. Evatt as he appeared at the time of his booking. RP (Trial) at 163.

"A trial court exercises discretion when deciding how to deal with a discovery violation." *State v. Barry*, 184 Wn. App. 790, 796, 339 P.3d 200 (2014). Mr. Evatt does

not demonstrate an abuse of discretion. As for the booking photo, witnesses disagreed as to whether it was an accurate and fair depiction. Mr. Evatt was free to testify to his belief that it was not.

*Motion regarding false statements.* One of the motions dealt with by Judge Van Doorninck at the outset of trial was Mr. Evatt's "Motion to Show to the Court that officers are falsefully [sic] making Statements, according to the (CAD)[7] report." CP at 42-47. The remedy sought was dismissal of the third degree assault charge under CrR 8.3(b). He complains on appeal that the judge refused to rule on the motion and thereby denied him a fair trial.

Judge Van Doorninck ruled that whether the officers' statements were false would be "for the jury to decide and that's something that you can cross-examine the witnesses about," effectively denying the motion. RP (Trial) at 30 (the ruling preceded Mr. Evatt's waiver of jury trial). She told Mr. Evatt that motion practice was not a forum for resolving factual disputes, but she did not refuse to consider his motion. She did not err.

*Denial of motions for continuance.* Mr. Evatt argues that by denying his several requests for continuance, the trial court abused its discretion and violated his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution and his rights under article I, sections 3 & 22 of the Washington Constitution. He asserts he was

---

[7] Computer aided dispatch.

27

entitled to a continuance because (1) Judge Nevin removed Mr. Evatt from court and failed to rule on his motions, (2) Mr. Evatt's investigator did not provide Mr. Evatt with his arrest history or depose the officers, (3) the prosecutor provided Mr. Evatt with untimely discovery, and (4) the trial court denied Mr. Evatt the right to call and question the jail's mental health professional.

We have already rejected Mr. Evatt's argument that discretion was abused when the court failed to grant a continuance for the late production of discovery. As for the jail's mental health professional, toward the end of the evidence the judge engaged in a long colloquy with Mr. Evatt as to what the jail's mental health professional could testify about. Most of what Mr. Evatt wanted her to say was inadmissible, either because it was irrelevant or not a matter of her personal knowledge. The only conceivably admissible evidence he could identify was her treatment of him. He could not identify why that mattered to his defense despite the judge suggesting that he take a lunch hour to think about it and let her know. The court did not abuse its discretion.

A trial court's decision to grant or deny a continuance will not be disturbed absent a showing of manifest abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 14, 691 P.2d 929 (1984). Given that Mr. Evatt had four months to prepare for trial, the trial court did not abuse its discretion in denying Mr. Evatt's other motions for a continuance.

*Evidence sufficiency.* Mr. Evatt argues that, without the officers' perjured testimony, insufficient evidence existed to convict him of third degree assault. When a

defendant raises insufficiency of evidence on appeal, he "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). That means that we view the officers' testimony as true. Viewing their testimony as true, the evidence was sufficient.

*Cumulative error.* Mr. Evatt argues that while no one of the foregoing alleged errors may require reversal, collectively they deprived him of a fair trial. Since we have found no error, the cumulative error doctrine does not apply.

We affirm Mr. Evatt's convictions and remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

I CONCUR:

_____
Lawrence-Berrey, A.C.J.

29

No. 34963-2-III

PENNELL, J. (dissenting) — Scott Evatt is a mentally ill man who so believed law enforcement had planted a tracking chip in his eye that he attempted to gouge out his eye as proof. Prior to trial on charges of assaulting police officers--who Mr. Evatt believed were conspiring against him--Mr. Evatt requested self-representation. Judge Jack Nevin was familiar with Mr. Evatt and expressed doubt at a pretrial hearing over whether Mr. Evatt had capacity to represent himself. Nevertheless, Judge Nevin granted Mr. Evatt's request, lamenting that our case law provides defendants "seemingly unfettered" ability to demand self-representation. Verbatim Report of Proceedings (VRP) (Aug. 5, 2015) at 28.

Judge Nevin's legal analysis was mistaken. Our cases permit courts to deny a mentally ill defendant's request for self-representation. Because the trial court failed to recognize this discretionary authority, I would reverse Mr. Evatt's conviction.

As noted by the majority, a judge's decision regarding whether to grant a defendant's motion for self-representation is reviewed for abuse of discretion. *State v. Lawrence*, 166 Wn. App. 378, 394, 271 P.3d 280 (2012). This is a deferential standard. It typically results in affirmance on appeal. But not always. A judge abuses discretion when the judge relies on the wrong legal standard or incorrectly believes only one outcome is available. *See State v. O'Dell*, 183 Wn.2d 680, 696-97, 358 P.3d 359 (2015). That is what happened here.

A criminal defendant's right of self-representation is far from absolute. This is partly because the right to self-representation and the right to counsel are two sides of the same coin: exercising the right to self-representation necessarily requires waiving the right to counsel. While the rights to self-representation and to counsel must compete for recognition, their weights are not equal. As between the right of self-representation and the right to counsel, the latter is stronger. For this reason, our courts apply a presumption against waiver of the right to counsel, and all reasonable inferences must be indulged against waiver. *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2016).

The question of whether the presumption against waiver of counsel has been overcome in the context of a mentally ill defendant can be complex. A defendant who is competent to stand trial is not automatically competent to waive assistance of counsel. *Indiana v. Edwards*, 554 U.S. 164, 178, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008). Mental illness expresses itself in different ways and in different contexts. *Id.* at 175. Constitutional concerns for a defendant's dignity, due process rights, and the appearance of fairness may militate in favor of allowing a defendant to proceed to trial but not to represent himself. *Id.* at 175-77. Accordingly, a court assessing whether a defendant has knowingly and intelligently waived the right to counsel may take a defendant's mental illness into account and consider what impact, if any, it has on the validity of the defendant's waiver of counsel. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 665-66, 260 P.3d 874 (2011).

2

In granting Mr. Evatt's motion to waive counsel, the court failed to recognize the presumption against waiver of counsel and the nuanced approach applicable in the case of a mentally ill defendant. Contrary to the comments made at a pretrial hearing, defendants do not have a "seemingly unfettered ability to represent themselves." VRP (Aug. 5, 2015) at 28. There is no "overwhelming [tidal] wave from the appellate courts" compelling a trial court to disregard concerns about a defendant's ability to waive counsel. *Id.* Our case law holds the presumption against waiver always applies. And, in the case of a mentally ill defendant, "[t]rial judges have permissive authority to deny self-representation" altogether. *Lawrence*, 166 Wn. App. at 389; *see also State v. Englund*, 186 Wn. App. 444, 456-57, 345 P.3d 859 (2015) (affirming denial of self-representation based on mental illness).[1]

Not only did Judge Nevin misapprehend his authority to deny Mr. Evatt's request to waive counsel, he also failed to appreciate his ability to disagree with Dr. Duris's opinion regarding Mr. Evatt's capacity to represent himself. During the pretrial proceedings, Judge Nevin was very candid, admitting his findings regarding Mr. Evatt's capacity to waive counsel were based entirely on the forensic evaluation report from

---

[1] The prosecuting attorney attempted to submit authorities advising the court of its discretion to deny Mr. Evatt's request for self-representation. VRP (Aug. 7, 2015) at 34-41. The judge indicated he would review the cases. *Id.* at 48. However, as noted by the prosecutor at the commencement of trial (1 VRP (Dec. 10, 2015) at 3-4), there was never any follow-up, presumably because there was a change in the presiding judicial officer.

3

Dr. Duris. VRP (Aug. 7, 2015) at 48. He stated he did not agree with Dr. Duris's assessment. *Id.* at 44-45.[2] Judge Nevin even went so far as to state it was "profoundly difficult to fathom on any level" that Mr. Evatt was competent to waive counsel. *Id.* at 48.

Judge Nevin should have had more confidence in his instincts. Contrary to his assessment, the issue of whether a defendant is competent to stand trial or waive counsel is not something courts simply leave to the opinion of mental health professionals. *See, e.g., State v. Sisouvanh,* 175 Wn.2d 607, 622, 290 P.3d 942 (2012) (a mental health professional's opinion "is only one consideration among many in a trial court's determination of the defendant's competency to stand trial"). Competence is not a clinical determination or a diagnosis located in the *Diagnostic and Statistical Manual of Mental Disorders.* It is a legal construct, governed by specific rules. *Drope v. Missouri,* 420 U.S. 162, 176, 96 S. Ct. 896, 43 L. Ed. 2d 103 (1975). While information gathered from psychologists and other experts is relevant to a judge's competency decision, the ultimate conclusion that a defendant is or is not competent is one for a judge to make independently. It is not a task that can be delegated to a mental health professional. *See Lawrence,* 166 Wn. App. at 388-89.

---

[2] Significantly, Judge Nevin was familiar with Mr. Evatt due to a prior criminal case. VRP (July 14, 2015) at 9.

Based on the foregoing, I agree with the prosecutor's observations that the issue of whether Mr. Evatt was competent to waive counsel, as opposed to competent to stand trial, was never fully resolved prior to trial. 1 VRP (Dec. 10, 2015) at 3-4. Judge Nevin failed to recognize his ability to deny Mr. Evatt's request for self-representation, and no one followed up on the prosecutor's suggestion to gather additional information. The result was that Mr. Evatt waived his right to a jury,[3] fired standby counsel,[4] and then proceeded through trial in an unfocused,[5] haphazard manner,[6] peppered with rebuffed requests for X-rays or medical records that could prove he was the victim of police abduction and the implanting of a tracking chip.[7] While the assistance of counsel may not have changed the outcome of Mr. Evatt's trial, it would have protected his

---

[3] Mr. Evatt opted not to have a jury based on his distrust of the court system and his belief he had been wrongly convicted in the past. 1 VRP (Dec. 10, 2015) at 46-48, 54-55.

[4] Mr. Evatt demanded the trial judge, Judge Kitty-AnnVan Doorninck, remove standby counsel because counsel had not subpoenaed dental and eye X-rays. 1 VRP (Dec. 10, 2015) at 8, 22.

[5] Judge Van Doorninck had to intervene and provide redirection at every step of the trial. *See, e.g.,* 2 VRP (Dec. 15, 2015) at 86-90 (opening statement); 4 VRP (Dec. 17, 2015) at 425-27 and 5 VRP (Dec. 21, 2015) at 598, 600, 604, 611 (defense testimony); 2 VRP (Dec. 15, 2015) at 155, 3 VRP (Dec. 16, 2015) at 319, 329, 389, 4 VRP (Dec. 17, 2015) at 413, 418 and 5 VRP (Dec. 21, 2015) at 569 (witness testimony); and 5 VRP (Dec. 21, 2015) at 604, 608, 611 (closing argument).

[6] Mr. Evatt repeatedly stated he was not prepared for trial or to question the State's witnesses. 1 VRP (Dec. 10, 2015) at 20, 32-33, 2 VRP (Dec. 15, 2015) at 72, 90, 143, 154-55, 161 and 3 VRP (Dec. 16, 2015) at 380, 383. During trial, he expressed confusion over whether the court would be holding a CrR 3.5 hearing or a trial. 2 VRP (Dec. 15, 2015) at 73, 218-19. He later voiced a desire to negotiate an agreed resolution of his case, such as drug court. 4 VRP (Dec. 17, 2015) at 396-97.

5

constitutional rights to dignity and the appearance of fairness. *See Edwards*, 554 U.S. at

176-77. More needed to be done to ensure the court's procedures recognized the full

array of Mr. Evatt's constitutional rights.

I realize Mr. Evatt's request for self-representation placed the trial court in a

difficult position. Mr. Evatt refused to work with any attorneys contracted by the

department of assigned counsel because he believed they had all conspired against him.

Had the court denied Mr. Evatt's request for self-representation, Mr. Evatt undoubtedly

would have complained vociferously and incessantly. But if, as the record suggests,[8] the

basis for the conflict between counsel and Mr. Evatt was that counsel refused to

investigate allegations that existed only as a result of Mr. Evatt's delusions, then the

court's recourse should have been to find Mr. Evatt not competent, not to deny counsel.

A defendant who, because of a mental disorder, is unable to work with counsel is not

competent to stand trial. *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d

824 (1960); *see also State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985);

RCW 10.77.010(15). A defendant in such circumstances might be referred for

competency restoration, but it is not appropriate simply to avoid the problem by

removing counsel.

---

[7] 1 VRP (Dec. 10, 2015) at 34-36, 39; 4 VRP (Dec. 17, 2015) at 403-07, 433.
[8] *See, e.g.*, 1 VRP (Dec. 10, 2015) at 7-8, 22, 26-28.

No. 34963-2-III
*State v. Evatt*

Mr. Evatt represented himself at a felony trial based on the trial court's misunderstanding of the standards applicable to a mentally ill defendant's request to proceed pro se. I would reverse a conviction imposed in such circumstances.

_____
Pennell, J.

7