# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54011-8-II |
| Respondent, | |
| v. | |
| FRASER McDONOUGH ROTCHFORD, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Fraser Rotchford appeals his convictions for stalking-violation of protection order and felony cyberstalking. Rotchford argues that the trial court erred by (1) not ordering additional competency evaluations, (2) not considering his mental health in determining whether he had waived his right to counsel, and (3) failing to enter final written findings of fact and conclusions of law. In his Statement of Additional Grounds, Rotchford also raises a speedy trial issue.

We hold that the trial court did not err in permitting Rotchford to represent himself and there was no speedy trial violation. Accordingly, we affirm Rotchford's convictions. However, we remand for correction of the scrivener's error related to the findings of fact and conclusions of law following trial.

FACTS

I. ARRAIGNMENT

Rotchford was charged with one count of stalking-violation of protection order and one count of felony cyberstalking, along with aggravating factors under RCW 9.94A.535(3)(h)(i) for both crimes.

At his arraignment on March 8, 2019, Rotchford requested to represent himself with the appointment of standby counsel. The trial court began its colloquy by asking Rotchford if he knew anything about the legal process. Rotchford stated that he had successfully defended himself on a prior occasion. The trial court asked him if he understood the charges against him, to which Rotchford replied that he had not received charging documents.

After the trial court informed Rotchford of the charges against him, Rotchford responded that he was "challenging both the legitimacy of being prosecuted in the State of Washington where I—I challenge anyone to show me that there—that there is a rule of law existing where there is (inaudible)—no apparent laws in the State of Washington," and that the "alleged victim in this case who lives in Vermont, uh, has failed to, uh, procure, uh, the sympathy of the civil authorities in Vermont for good reason." Report of Proceedings (RP) at 6-7. Rotchford then requested a copy of the charging documents. The trial court provided the documents to him and then informed Rotchford of the maximum penalties for the crimes charged.

The trial court next asked Rotchford if he was familiar with the "rules of evidence and how to question witnesses, et cetera." RP at 10-11. Rotchford did not reply and instead asked whether he was being charged with stalking or violation of a protection order. The trial court informed him that he was charged with stalking-violation of a protection order, and Rotchford then asked why

2

there were two RCWs listed for the first count. The trial court explained that it had to do with definitions of the crime charged.

The trial court concluded that Rotchford had some knowledge of the legal system and knew that there were citations for certain criminal offenses. Thereafter, Rotchford confirmed to the trial court that his waiver of his right to counsel was knowing and voluntary. The trial court granted Rotchford's request to represent himself and appointed standby counsel.[1]

## II. COMPETENCY EVALUATION

Three weeks later, the State informed the trial court that it had received an 18-page letter from Rotchford that caused it concern as to whether he was competent to stand trial and competent to represent himself. The trial court said it had not read the letter and requested that the State file a motion regarding competency. Rotchford interjected that he wanted to make a motion regarding the competency of counsel for the State.

The State filed a motion seeking a competency evaluation of Rotchford and attached Rotchford's letter. The letter began by addressing legal issues, including a bar complaint and dismissal of the charges against him, but after a couple pages, the letter turned into ramblings including subjects such as his relationship with his father, the Salem witch trials, Hitler and the Nazis, the abolitionist movement, the bubonic plague, and the use of chemical weapons.

A hearing on the motion for an order of competency was held the following month. At the hearing, Rotchford told the trial court that the State was pretending to be incompetent as "a

---

[1] Rotchford later fired his initial standby counsel, and after a period of him proceeding without standby counsel, the trial court appointed another individual to serve as standby counsel.

substitute for, uh, welfare policies" and that he had responded to the State's motion. RP at 83. The trial court stated,

> I looked at stuff and you responded by talking about things that had nothing to do with the reasons for the motion.
>
> And that's—so that's what leads me to believe that maybe you're not competent to proceed because you seem to go off on tangents relating to things that have nothing to do with what we're talking about.

RP at 85. After a back and forth between Rotchford and the trial court, the trial court stated,

> I am convinced just by the way you're proceeding and the way you're talking and the way these letters that keep being sent to the [trial] [c]ourt are phrased, that I question whether you are competent to proceed and certainly whether you are competent to represent yourself in this matter.

RP at 86. The trial court ordered a competency evaluation.

Two weeks later, Rotchford was evaluated by Dr. Laurel Stinar who reviewed the letter sent by Rotchford, interviewed him, and examined his previous evaluations. In her report dated April 19, 2019, Dr. Stinar found that Rotchford did not have any "observable signs of a major psychotic or mood disorder" that would impair capacities necessary for competency. Clerk's Papers (CP) at 64. Dr. Stinar concluded that Rotchford "had the capacity to understand the proceedings against him and assist in his defense." CP at 65.

Dr. Stinar explained that Rotchford had been evaluated for competency on at least six prior occasions in the last ten years and that on all but one occasion he had been found competent. She noted that Rotchford had been found incompetent in 2017, where he "relayed a large number of his paranoid delusional beliefs about the circumstances of his legal case" and his speech was "overelaborate and rambling." CP at 67 (internal quotation marks omitted). The evaluator in 2017 found that Rotchford was incompetent because he was unable to assist in his defense "due to

symptoms of a psychotic order" and diagnosed him with unspecified schizophrenia spectrum and other psychotic disorder. CP at 67. The 2017 evaluation resulted in Rotchford being committed for 90 days for competency restoration. While he was in treatment, another doctor opined: "Rotchford's previously noted symptoms of mental illness have remitted to the point that he currently has the capacity to rationally understand the nature of the proceedings against him and the capacity to assist in his own defense." CP at 67 (internal quotation marks omitted). During other evaluations finding Rotchford competent to stand trial, he was consistently diagnosed with various mental illnesses including unspecified psychosis and paranoid schizophrenia.

Dr. Stinar stated that it was unclear whether Rotchford's behaviors are "better accounted for by a schizophrenia spectrum disorder, a personality disorder, or some combination therein." CP at 69. Dr. Stinar noted that Rotchford had a tendency to incorrectly interpret events, held odd beliefs, and had a "suspiciousness or paranoid ideation." CP at 69. She stated that at times Rotchford's thought process and speech were "odd," "circumstantial, vague, metaphorical, and overelaborate[,] but without derailment or incoherence." CP at 69. She also noted that Rotchford may experience "[p]sychotic-like symptoms" when under stress. CP at 69. She noted that the letter he sent to the State "does appear a good picture or characterization of [] Rotchford when he is not doing well" and that "[h]is speech content was not consistent with that which was present in his letter to [the State] and suggests that his mental status at this time is improved compared to when he sent the letter." CP at 69, 71. Dr. Stinar opined that Rotchford was competent to stand trial.

Three weeks later, the trial court held a hearing regarding the competency determination. The trial court noted that the competency evaluation had found Rotchford competent and asked

Rotchford if he agreed, to which Rotchford replied, "Yes." RP at 118. The trial court then entered an order finding Rotchford competent.

### III. ADDITIONAL PRE-TRIAL PROCEEDINGS

Three weeks later in May 2019, Rotchford continued to exhibit odd and disruptive behaviors. Rotchford interrupted the trial court as it was ruling on a motion saying, "Would you shut the f*** up" and later used derogatory names for other individuals in the courtroom. RP at 153. Rotchford also accused the public defender's office of being racist and said something that the court reporter was not able to completely transcribe about "slavery and the abolitionists." RP at 168. He asked the trial court to "refine" the Washington Constitution and Washington law because:

> Schizophrenia is when a person loses or has their legal person-hood violated. The issue in Washington State is that in the absence of laws, which are the basis of a rule of law and thus, legal person-hood, Washington State residents don't have the capacity to suffer schizophrenia because they don't have legal person-hood to begin with.

RP at 175-76. The trial court asked Rotchford if he was referring to his own schizophrenia, and Rotchford clarified that he was talking about schizophrenia of the State "or schizophrenia generally." RP at 175. The trial court denied Rotchford's request to refine the Washington Constitution and Washington law.

Approximately two months later, in July 2019, a CrR 3.5 hearing was scheduled. Rotchford made a motion to dismiss the charges based on a violation of his speedy trial rights. The trial court denied the motion and asked Rotchford if he was ready to proceed with the CrR 3.5 hearing. Rotchford replied, "I don't have anything more to say to any of you here. You—you're f***ed." RP at 214. The trial court repeatedly asked Rotchford to sit down and he refused.

Rotchford raised his fists to the trial court, required three corrections officers to "subdue him," and was removed from the courtroom. RP at 214-15.

Later, Rotchford was brought back to the courtroom in restraints and the hearing commenced. RP 215. The State called two witnesses. Rotchford made one objection during the first witness's testimony but did not cross-examine the witness. Rotchford also objected to the admission of an exhibit during the second witness's testimony and then interjected two additional times to clarify the objection. Rotchford cross-examined the second witness. Rotchford did not testify at the hearing.

The CrR 3.5 hearing was then continued one week. At the outset of the continued hearing, standby counsel raised concerns about Rotchford's competency in light of seven letters received from Rotchford over several days that gave him some "very, very serious concerns about his competency at this point and his ability to represent himself." RP at 255-56. Rotchford interrupted standby counsel saying, "Okay, you can shut your f***ing mouth," and he threw standby counsel's business card off the table. RP at 256.

Responding to standby counsel's concerns, the trial court stated, "[T]here's been a competency evaluation, and I have received no requests that found [] Rotchford incompetent to assist in his defense and to understand the nature of the pleadings and proceedings." RP at 256-57. The trial court then acknowledged that it had received several pages of letters from Rotchford, many of which were "disturbing" and "asked for horrific things to be done to the victim," as well as counsel for the State. RP at 257. The trial court also received several letters requesting the trial court to take actions unrelated to the case. However, the trial court also said that there was

evidence in the letters that Rotchford understood the charges and that he had made relevant motions.

The State agreed with the trial court. The State added that under Washington law, where there is doubt as to a defendant's competence, a motion for an evaluation may be made by either party or the trial court. The State noted that it was not clear how that played out with standby counsel, and further stated,

> But I do believe [standby counsel] has essentially raised such a doubt to Your Honor today as to [] Rotchford's competence. And unfortunately I'm not privy to the contents of that, but, um, I think if [standby counsel] was actual defense counsel as opposed to standby, um, then I think we would probably be having another 1077 motion and another evaluation. [T]o be honest, Your Honor, I would be interested to see what [an evaluator] would have to say with this entire volume of correspondence brought to it.

RP at 259-60. The State's counsel noted that the previous evaluation was based on a single letter and that the same kind of behavior had continued. However, the State admitted that Rotchford understood the roles of the parties as well as the charges and the nature of the proceedings, indicating he believed Rotchford continued to be competent.

The trial court then engaged Rotchford in a second colloquy, asking Rotchford his opinion about his competency. Rotchford did not directly address the issue; instead, he questioned the legitimacy of the first evaluation and brought up concerns with venue. Rotchford did, however, identify the charges against him, stated he had a right not to testify, acknowledged he had a right to bring witnesses on his own behalf, and acknowledged standby counsel was not his attorney. Rotchford also expressed frustration that standby counsel was not assisting him but then spoke about the "SEC" and "FCC" and how standby counsel was manipulating stock prices. RP at 267. Rotchford then said that he understood there would be a jury selection process "unless I chose a

bench trial." RP at 268.  The trial court reserved its ruling on the issue of whether to order another competency evaluation but indicated that it believed Rotchford understood the proceedings.

The trial court then proceeded with the continued CrR 3.5 hearing.  Rotchford told the trial court that he thought the CrR 3.5 hearing had been finished without him the previous day and that "Seth Doherty[2] . . . was representing me at that time."  RP at 270.  When the trial court asked Rotchford why he thought the hearing had finished on the previous day, Rotchford and the trial court engaged in the following conversation:

> [Rotchford]:  Um, because Seth Doherty—well, uh—
>
> THE COURT:  Okay.
>
> [Rotchford]:  —the number of reasons, the—because I talk with God.  Uh, God talks about things in a different way than other people do so that doesn't mean things happen in the legal sense, I don't know.
>
> THE COURT:  So you think that one of the reasons that you believed that the 3.5 hearing had completed was because of an indication with God (sic).
>
> [Rotchford]:  Well, Seth Doherty didn't show up yesterday, too.  Which—and he had said he was going to and I didn't have any reason to believe he hadn't, uh, or reasoning he would, um, lie to me considering the statement he volunteered . . . .

RP at 271.  The State then called its witness.  Rotchford cross-examined the witness, eliciting mostly irrelevant testimony.

Rotchford then offered his own testimony.  After being sworn in and asked to state his name for the record, Rotchford told the trial court that he had recently changed his name to David Albert Aubon Harold Fields.  The trial court declined to use the new name.  Rotchford's testimony and argument were largely irrelevant.

---

[2] Seth Doherty is an attorney for the Clallam County Public Defender's Office.

The day after the CrR 3.5 hearing, the trial court entered a memorandum opinion and order regarding competency, determining that Rotchford remained competent to stand trial and to proceed with self-representation. In its opinion, the trial court found that Rotchford had been evaluated and found competent multiple times and that "[t]he observations made in those evaluations provide an accurate summary of the court's experience with [] Rotchford in this current proceeding." CP at 42. The trial court stated that Rotchford's "pattern of writing letters and expressing a wide range of views is not a new practice for him." CP at 42. The trial court said it was confident that Rotchford understood the proceedings and was capable to assist in his defense, noting that expressing a wide range of views may be unusual but does not necessitate a finding of incompetency.

During the course of the pretrial proceedings, Rotchford sent letters and filed hundreds of pages of motions with the trial court addressing legal issues like jurisdiction, double jeopardy, and a diminished capacity defense, but also containing ramblings similar to those contained in the letter that caused the State to raise concerns regarding competency.

IV. BENCH TRIAL AND SENTENCING

Rotchford asked for a bench trial, waiving his right to a trial by jury despite standby counsel's advice to the contrary. The bench trial began August 12, 2019.

During the State's opening statement, Rotchford decided he wanted assistance from standby counsel and requested that standby counsel sit next to him. Rotchford used his opening statement to take issue with many of the things the State had said it its opening statement as well as to address his own version of the case.

The State called the victim as a witness. Rotchford objected several times during her testimony, and some of his objections contained a legal basis while others did not. When Rotchford cross-examined the victim, some of his questions appeared to be helpful and relevant to the case, but some were irrelevant, including questions regarding protesting military involvement, "John Locke's theory of tabula rasa," "an imperative of forgiveness" according to Darwin's theory of natural selection, and the castration of the North Korean leader. RP at 610-11.

The State called additional witnesses to testify. Rotchford offered up several objections during the course of the testimony. Some objections had a legal basis, although many did not. Rotchford cross-examined the witnesses, asking some relevant questions and some irrelevant. Rotchford also allowed his standby counsel to re-cross examine a witness.

Rotchford raised the issue of competency after the State rested its case in chief. The trial court found that it had previously ruled on the matter and that it was "abundantly clear" Rotchford understood the nature of the charges against him and was capable of assisting in his defense. RP at 858. Standby counsel then told the court that it believed Rotchford was not able to assist in his own defense. The trial court responded, "Okay," and moved on. RP at 858.

The trial court found Rotchford guilty of stalking-violation of a protection order and felony cyberstalking. The trial court imposed an exceptional sentence of 180 months based on a finding of aggravating factors.

Rotchford appeals.

11

ANALYSIS

## I. COMPETENCY HEARING

Rotchford argues that the trial court erred in failing to order subsequent evaluations of his competency to stand trial. We disagree.

## A. LEGAL PRINCIPLES

A criminal defendant has a fundamental due process right not to be tried if they are incompetent to stand trial. U.S. CONST. amend. XIV; *State v. McCarthy*, 193 Wn.2d 792, 800-01, 446 P.3d 167 (2019). A defendant is competent to stand trial "if he has the capacity to understand the nature of the proceedings against him and he can assist in his own defense." *State v. Coley*, 180 Wn.2d 543, 551-52, 326 P.3d 702 (2014). "A defendant can assist in his own defense when he 'possess[es] an adequate recall of the factual events involved in the charge against him, [is] able to communicate those recollections to his attorney, and ha[s] both an intellectual and emotional appreciation of the ramifications and consequences of the crime charged.' " *McCarthy*, 193 Wn.2d at 806 (alterations in original) (quoting 12 WASHINGTON PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 902, at 171 (3d ed. 2004)).

Additionally, "Washington law affords greater protection by providing that '[n]o incompetent person may be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues.' " *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 862, 16 P.3d 610 (2001) (alteration in original) (quoting RCW 10.77.050). Washington law states:

> Whenever . . . there is reason to doubt [a defendant's] competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate a qualified expert or professional person, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant.

RCW 10.77.060(1)(a). A trial court should consider the following when deciding whether to order a competency evaluation: " 'defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.' " *Fleming*, 142 Wn.2d at 863 (quoting *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)). Once a trial court has reason to doubt a defendant's competency to stand trial, it must order a competency evaluation. *Id.* at 863.

A trial court's decision to order a competency hearing is reviewed for an abuse of discretion. *McCarthy*, 193 Wn.2d at 803. An abuse of discretion occurs only when a decision is manifestly unreasonable or based on untenable grounds. *Id.* Our review of the record is focused on determining whether the exercise of discretion was reasonable and tenable. *Id.* Where competency is "fairly debatable," the trial court does not abuse its discretion. *Id.*

A trial court abuses its discretion in not ordering a competency evaluation where there is significant evidence of a defendant's incompetence. *Id.* at 804. Evidence from defense counsel and expert witnesses is given significant weight in this determination. *Id.* Where a trial court initially finds a defendant competent to stand trial and an appellant argues that an additional competency evaluation should have occurred, our focus is whether there were signs that a defendant's condition had significantly changed since the initial competency hearing. *State v. Oritz*, 119 Wn.2d 294, 300-01, 831 P.2d 1060 (1992), *overruled on other grounds by State v. Condon*, 182 Wn.2d 307, 323, 343 P.3d 357 (2015); *State v. Fedoruk*, 5 Wn. App. 2d 317, 339, 426 P.3d 757 (2018).

B. APPLICATION

Here, because there was a competency evaluation and Rotchford was determined to be competent, the focus of our analysis is whether his condition significantly changed after the competency hearing such that the trial court should have ordered an additional competency evaluation. *See Oritz*, 119 Wn.2d at 300-01.

Rotchford argues that the trial court should have ordered an additional competency evaluation when concerns were raised by his standby counsel. The request for an additional competency hearing was based on additional motions and letters Rotchford had filed that contained ramblings on matters irrelevant to the proceedings. As the trial court observed, this behavior did not represent a significant change in Rotchford's behavior since the prior competency evaluation where Rotchford had been found competent. In fact, it was a continuation of the same behavior that had caused the trial court to order the first competency evaluation. The trial court asked Rotchford questions about the proceeding and he provided satisfactory answers. Standby counsel's concerns should be given significant weight, but because he was not appointed until after the initial competency evaluation and was not used significantly by Rotchford until trial, he was unable to speak to actual changes in Rotchford's behavior. Because the record supports a finding that there was no significant change in Rotchford's behavior, the trial court did not abuse its discretion in not ordering an additional competency evaluation prior to trial.

Rotchford also argues that the trial court should have ordered an additional competency evaluation at trial. Again, the record does not show a significant change in Rotchford's behavior at trial that would require the trial court to order a second competency evaluation. Rotchford's behavior was consistent: he continued to ramble about irrelevant matters and behaved in a

disruptive manner during trial, as he had done during the course of the entire proceeding. And as explained above, although standby counsel's statements should be considered, they do not carry as much weight because he was appointed after the competency evaluation. Because the record supports the trial court's finding that there was no significant change in Rotchford's behavior throughout the proceedings, the trial court did not err in denying his motion for an additional competency evaluation at trial.

## II. WAIVER OF RIGHT TO COUNSEL

Rotchford argues that the trial court failed to consider his mental illness when it allowed him to waive his right to counsel, violating his right to counsel and his due process rights. We disagree.

### A. LEGAL PRINCIPLES

The Washington Constitution provides criminal defendants with an explicit right to self-representation. WASH. CONST. art. I, § 22. The Sixth Amendment to the United States Constitution also implicitly provides for this right. *Faretta v. California*, 422 U.S. 806, 807, 955 S. Ct. 2525 (1975). "This right is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010).

However, a defendant does not have an absolute right to self-representation. *Id.* at 504. A trial court must determine whether a defendant's request for self-representation is voluntary, knowing, and intelligent. *Id.* This determination usually can be accomplished with a colloquy. *Id.* That colloquy should at the least notify the defendant of (1) the nature and classification of charges brought, (2) maximum penalties if the defendant is convicted, and (3) technical legal rules

the defendant will need to follow. *City of Bellvue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 257 (1984).

In making the determination of whether to allow a defendant to proceed with self-representation, a trial court must indulge " 'every reasonable presumption' against defendant's waiver of his or her right to counsel." *Madsen*, 168 Wn.2d at 504 (quoting *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999)). "In considering whether a defendant whose competency is in question is capable of making a knowing and intelligent waiver, a trial court considers the background, experience, and conduct of the accused, which may include a history of mental illness." *In re the Pers. Restraint of Rhome*, 172 Wn.2d 654, 663, 260 P.3d 874 (2011). However, mental health is just one factor and is not dispositive in this determination. *Id.* at 665. The defendant's " 'skill and judgment' " is not a relevant consideration in this determination. *Id.* at 663 (internal quotation marks omitted) (quoting *State v. Hahn*, 106 Wn.2d 885, 890 n.2, 726 P.2d 25 (1986)).

We review decisions of waiver of the right to counsel for abuse of discretion. *Coley*, 180 Wn.2d at 559. Waiver of counsel is an "ad hoc," fact specific analysis best suited for trial courts. *Id*. "A court abuses its discretion when an 'order is manifestly unreasonable or based on untenable grounds.' " *Rhome*, 172 Wn.2d at 668 (quoting *Wash. State Physicians Ins. Exch. & Ass'n v. Fisions Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993)). Discretionary decisions of a trial court are based on untenable grounds if they rely on facts not supported in the recorded or are based on the wrong legal standard. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009). A trial court abuses its discretion where it makes a ruling based on a flawed interpretation of the law. *Id.*

16

Where a trial court determines a defendant lacks the requisite mental competency to waive his right to counsel or to proceed with self-representation, allowing them to proceed with self-representation violates their due process rights. *State v. Kolocotronis*, 73 Wn.2d 92, 99, 436 P.2d 774 (1968). However, a trial court is not required to apply a heightened standard for waiver of counsel where there are mental health concerns. *Rhome*, 172 Wn.2d at 666; *see also*, *Hahn*, 106 Wn.2d at 895-901 (defendant's waiver was knowing and intelligent even though trial court did not conduct evaluation of defendant's mental status after competency determination).

B. APPLICATION

Rotchford argues that the trial court's failure to explicitly consider his mental illness while evaluating his waiver of counsel violated his right to counsel and his due process rights. He maintains that after concerns about his competency were addressed, the trial court should have also addressed his ability to proceed pro se and considered whether his mental illness prevented him from representing himself. We disagree.

Here, Rotchford argues that the trial court was required to reevaluate his decision to represent himself in light of Dr. Stinar's report, his subsequent filings with the trial court, and his courtroom behavior. To support his argument, Rotchford cites to cases finding that a trial court may deny a defendant their right to self-representation if it finds they lack the mental capacity to defend themselves. However, the cases cited by Rotchford are distinguishable because the defendants in the cases were denied their right to self-representation, whereas Rotchford was not denied his right to self-representation. *Kolocotronis*, 73 Wn.2d at 98-105; *Indiana v. Edwards*, 554 U.S. 164, 177-78, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008).

Rotchford also relies on *Rhome*. Br. of App. at 30-31. There, the defendant made a similar argument to Rotchford's, asserting that the presence of mental illness requires the trial court to apply a heightened standard when evaluating a defendant's waiver of a right to counsel. *Rhome*, 172 Wn.2d at 664. However, the court in *Rhome* rejected that argument, stating that the law does not require a heightened standard when receiving waiver of a right to counsel from a mentally ill defendant—the knowing and intelligent waiver suffices. *Id.* at 666.

Although the trial court did not explicitly discuss Rotchford's mental illness when determining whether he validly waived his right to counsel, it was not required to do so. In *Hahn*, the waiver of counsel was upheld where the trial court did not conduct an independent inquiry into the defendant's mental illness, even though it was aware of it. 106 Wn.2d at 895-901. Here, the record does not clearly show the level of awareness that the trial court had of Rotchford's mental illness when he waived his right to counsel at arraignment. At the later CrR 3.5 hearing when the trial court was clearly aware of Rotchford's mental illness, the court engaged him in a colloquy relating to the proceedings but did not directly address his mental illness. However, since under *Hahn* an explicit discussion on the record of mental illness is not required, the trial court did not abuse its discretion in failing to do so.[3]

---

[3] Rotchford asks us to apply the *Mathews v. Eldridge* factors to the determination of whether the trial court's decision that he waived his right to counsel, without explicitly addressing his competency due to his mental illness, violated his due process rights. 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Rotchford cites no cases supporting the application of the *Mathews* test to the decision in his case. Indeed, in the context of competency hearings related to criminal proceedings, *Mathews* is not applied. *Medina v. California*, 505 U.S. 437, 443, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992) (reviewing burdens of proof in state competency hearings, Court holds that it is inappropriate to apply *Mathews*); *see also State v. Heddrick*, 166 Wn.2d 898, 904 n.3, 215 P.3d 201 (2009) (stating that "the *Mathews* balancing [test] is not appropriate in criminal cases"). Our Supreme Court has likewise found that the *Mathews* balancing test does not apply to

In evaluating Rotchford's arguments, we emphasize that this is an area where a significant amount of discretion must be given to trial courts because of the ad hoc and fact specific nature of the question of waiver of the right to counsel. We acknowledge that these decisions are exceedingly difficult decisions for trial courts to make, especially where mental illness is involved, because they are tasked with balancing "competing and contradictory rights." *State v. Lawrence*, 166 Wn. App. 378, 390, 271 P.3d 280 (2012).

### III. TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Rotchford also argues that the trial court erred in failing to enter final written findings of fact and conclusions of law. However, the trial court did enter findings of fact and conclusions of law. In doing so, it erroneously left in the word "Proposed" so that the title of the document reads "Proposed Findings of Fact and Conclusions of Law." CP at 24. The State admits that the document should be corrected. We find that this is a scrivener's error that the trial court should correct on remand. *See State v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016).

### IV. STATEMENT OF ADDITIONAL GROUNDS (SAG)

Rotchford also claims in his SAG that the trial court violated his constitutional right to a speedy trial. SAG Addendum #1. We disagree.

A. LEGAL PRINCIPLES

Constitutional issues are reviewed de novo. *State v. Ollivier*, 178 Wn.2d 813, 826, 312 P.3d 1 (2013). The federal and state constitutions both provide for a right to a speedy trial, a right

---

competency determinations in criminal matters. *Coley*, 180 Wn.2d at 557-58. Since Rotchford's principal complaint with the trial court's decision mirrors the issues raised in the competency determinations considered in *Medina* and *Coley*, we decline to apply the *Mathews* factors here.

that is "substantially the same" in both provisions. *Id.* at 826. "[T]o trigger the speedy-trial analysis, 'an accused must allege that the interval between the accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay' because 'by definition,' the accused 'cannot complain that the government has denied him a speedy trial if it has, in fact, prosecuted his case with customary promptness.'" *Id.* at 827 (internal quotation marks omitted) (quoting *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)). Whether a delay was presumptively prejudicial is a fact specific inquiry that considers "length and reason for the delay, whether the defendant has asserted his right, and the ways in which the delay causes prejudice to the defendant." *State v. Iniguez*, 167 Wn.2d 273, 283, 217 P.3d 768 (2009).

## B. APPLICATION

Rotchford's arraignment was on March 8, 2019. A competency evaluation was ordered on April 5, 2019. A written order was entered by the trial court finding Rotchford competent on April 26. The same day, the parties agreed to Rotchford's request to continue the trial to July 15 and an order was entered by the court. On July 30, Rotchford filed a motion to dismiss based on a violation of his right to a speedy trial. The trial started on August 12, 2019.

We find that the delay was not presumptively prejudicial. First, although the length of the delay was about five months during which time Rotchford was in custody,[4] approximately three months of the delay was due to the competency evaluation and then a request for a continuance by Rotchford. Second, the trial occurred very shortly after Rotchford asserted his rights. While Rotchford did make a motion to dismiss based on violation of his speedy trial rights on July 30,

---

[4] It is unclear from the record whether Rotchford was imprisoned for the charges he was then facing or for a prior conviction.

his motion was made only two weeks after the date he sought for his trial and less than two weeks before the trial actually started. Third, it is unlikely that the modest delay caused prejudice at the trial. Although the State presented eyewitness testimony, most of the testimony related to events that had occurred over the previous eight years, making it less likely that the short duration of the delay caused any meaningful change in the reliability in the trial testimony or availability of witnesses.[5]

Therefore, considering these factors together, we conclude that because the State prosecuted Rotchford's case " 'with customary promptness,' " Rotchford did not suffer prejudice due to any delay. *Ollivier*, 178 Wn.2d at 827 (internal quotation marks omitted) (quoting *Doggett*, 505 U.S. at 651). Because the factors weigh against a finding of presumptive prejudice, we find that Rotchford's right to a speedy trial was not violated. [6]

---

[5] To the extent that Rotchford is arguing that the trial court violated the criminal rules regarding time for trial, we disagree. Because there was an agreed continuance to July 15, 2019, the August 12, 2019 trial date was within thirty days of the agreed continuance and, thus, did not violate the criminal rules. *See* CrR 3.3.

[6] Rotchford raises numerous additional claims including: the trial court ignored a petition in Jefferson County District Court (Ground #1), Rotchford was provided with the address of the alleged victim, the victim improperly offered a *Twelve Angry Men* accusation (Ground #1), claim related to the space-time continuum and Einstein's theory of relativity (Ground #2), the trial court demonstrated criminal incompetence by not dropping charges after a bar complaint was filed and sending Rotchford to a different facility (Ground #3), the prosecutor attempted to kidnap Rotchford and the Clallam County Prosecutor (Ground #3), claim of malicious redactions to the report of proceedings (Addendum #1), claim that competency hearing was wrong because competency evaluation was improperly done (Addendum #2), and claim that prosecutors and investigators failed to pass evaluations "vectored on a theoretic criterion of penitence" (Addendum #3). These claims are based on facts outside the record or fail to identify the nature and occurrence of the alleged errors. Accordingly, we decline to address them. *See State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013); RAP 10.10(c).

No. 54011-8-II

CONCLUSION

Because we hold that the trial court did not err in permitting Rotchford to represent himself and there was no speedy trial violation, we affirm Rotchford's conviction. However, we remand for correction of the scrivener's error related to the trial court's findings of fact and conclusions of law following trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
PRICE, J.

We concur:

_____
LEE, C.J.

_____
MAXA, J.